John J. CALABRESE & Deborah
J. Shirk, Appellants

v.

P. Thomas ZEAGER.

Superior Court of Pennsylvania.

Argued Feb. 26, 2008.
Filed May 22, 2009.
Reargument Denied Aug. 4, 2009.

William B. Byler, Lancaster, for appellants.

George T. Cook, Lancaster, for appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Appellants, John J. Calabrese and Deborah J. Shirk ("Calabrese and Shirk"), appeal the judgment entered in favor of appellee, P. Thomas Zeager ("Zeager"), on March 23, 2007, pursuant to a complaint filed by Calabrese and Shirk which alleged that Zeager breached a Sanitary Sewer Easement and Sewage Treatment Agreement ("the Agreement"). Finding that

Zeager did breach the Agreement, we reverse.

¶ 2 Preliminarily, we must address the facially untimely filing of the notice of appeal. Calabrese and Shirk filed their notice of appeal on May 2, 2007, forty days after the entry of judgment. On or about May 24, 2007, an attorney from this court's Central Legal Staff mailed a letter to counsel for the parties that requested counsel for Calabrese and Shirk to explain why the notice of appeal was not untimely as having been filed beyond the running of the 30–day appeal period. *See* Pa.R.A.P. 903(a). Counsel for Calabrese and Shirk promptly responded by letter dated May 29, 2007.

¶ 3 In his response, counsel noted the following relevant docket entry:

| JUDGMENT COURT ORDER—3/23/2007 | ENTERED IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT, P. THOMAS ZEAGER, PURSUANT TO THE COURT [ORDER] DATED JANUARY 26, 2007. FILED BY GEORGE T. COOK ESQ. JUDGMENT ENTERED AS DIRECTED. RANDALL O. WENGER, PROTHONOTARY. NOTICE OF ENTRY OF JUDGMENT MAILED TO THE DEFENDANT. |
|---|---|

Counsel observed that this entry mentions service of notice upon defendant Zeager only and that no service was made upon Calabrese and Shirk. Counsel further claimed that copies of the filed Praecipe and Notice of Entry of Judgment were not mailed until April 3, 2007, the date allegedly appearing on the envelope postmark. Counsel then called attention to the following Rule of Appellate Procedure which sets the date of entry of an order as the date the clerk makes the notation on the docket that notice has been mailed to the party:

**Rule 108. Date of Entry of Orders**

**(a) General rule.**

(1) Except as otherwise prescribed in this rule, in computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk or office of the government unit makes such copies public. The day of entry of an order may be the day of its adoption by the court or other government unit, or any subsequent day, as required by the actual circumstances.

**(b) Civil orders.** The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b).

Pa.R.A.P. 108(a)(1) and (b), 42 Pa.C.S.A.[1]

▇ ¶ 4 Under this Rule, the appeal period does not begin to run until the clerk notes on the docket that notice of the entry of judgment has been sent to the prospective appellant. Counsel for Calabrese and Shirk asserts that since notice was not effectively mailed until April 3, 2007, appellant had 30 days from this date to file the notice of appeal.

---

**1.** Case law also supports the notion that the appeal period does not begin to run until the date the clerk makes the notation on the docket that notice has been mailed to the party, and that where no notation is made, the appeal period is not triggered. *Estate of Keefauver*, 359 Pa.Super. 336, 518 A.2d 1263 (1986).

¶ 5 The docket entry quoted by appellants' counsel is that which appears on Lancaster County's internet website. Unfortunately, the online version contains obvious errors.[2] The paper docket entry for March 23, 2007, as it appears in the official record that has been forwarded to this court, reads as follows:

MARCH 23, 2007—PRAECIPE TO ENTER JUDGMENT IN FAVOR OF THE DEFENDANT PURSUANT TO THE ORDER OF COURT DATED MARCH 19, 2007 AND OPINION AND ORDER DATED JANUARY 26, 2007 WITH CERTIFICATE OF SERVICE FILED BY: GEORGE T. COOK, ESQ. JUDGMENT ENTERED AS DIRECTED. RANDALL O. WENGER, PROTHONOTARY. NOTICE OF ENTRY OF JUDGMENT MAILED TO W. BRYAN BYLER, ESQ. OF BYLER, GOODLEY, WINKLE & HETRICK, P.C., GEORGE T. COOK, ESQ. OF BLAKINGER, BYLER & THOMAS, P.C., JOHN J. CALABRESE AND DEBORAH J. SHIRK, P. THOMAS ZEAGER, HERSHEY FARM RESTAURANT AND MOTOR INN.

¶ 6 This docket entry clearly shows that notice of the entry of judgment was mailed to Calabrese and Shirk's counsel on March 23, 2007. Thus, this case presents two conflicting dockets which yield different results when the timeliness of Calabrese and Shirk's notice of appeal is analyzed. Pursuant to the online docket, the appeal period has not yet begun to run, and Calabrese and Shirk's notice of appeal is timely; pursuant to the paper docket, the appeal period expired on April 23, 2007, and Calabrese and Shirk's notice of appeal is untimely. We find that this dichotomy must be resolved in Calabrese and Shirk's favor.

¶ 7 Since Lancaster County published the flawed online docket and thereby imbued the information with the aura of legitimacy, litigants should not be penalized for relying upon errors contained therein. Therefore, we consider the facially late filing of the notice of appeal as to the paper docket to be the result of a breakdown in the operation of the court. Under such circumstances, an appellate court may grant equitable relief in the form of an appeal *nunc pro tunc*. *Criss v. Wise*, 566 Pa. 437, 781 A.2d 1156 (2001). Therefore, we will review Calabrese and Shirk's appeal on the merits and will not quash it for untimeliness. We now turn to that appeal.

¶ 8 The opinion of the trial court provides our factual synopsis:

In 1991, Edwin G. Hershey (hereinafter 'Hershey') and Sanford M. Groff ('Groff') entered into an agreement ('the Agreement') which generally stated that Groff was permitted to use the sewage plant located on Hershey's land in exchange for $20,000. Specifically, the Agreement granted an easement across Hershey's land for the installation, repair, maintenance and operation of an eight inch sewer line which Groff could use to construct sewer lines to connect to the plant. Additionally, Groff was limited to 5,000 gallons of sewage discharge per day.

Subsequent to the Agreement, Groff sold his property to Plaintiffs John J. Calabrese and Deborah J. Shirk ('Calabrese') and Hershey sold his land to Defendant P. Thomas Zeager ('Zeager'). At the time of sale, Groff had not connected to the plant located on Hershey's property. Thus, Calabrese and Zeager were obligated by the Agreement, which

---

**2.** For instance, the online docket entry states that judgment was entered in favor of Cala-

brese and Shirk and against Zeager; when, in fact, exactly the opposite is true.

was binding on successors in title to Groff and Hershey.

In the fall of 2003, Calabrese entered into a lease agreement with a new tenant. The tenant's planned use of the premises required more sewage capacity than Calabrese's own on-site septic tank could handle. Therefore, Calabrese decided that he wished to tap into the plant on the Zeager property. Calabrese claims he left voice mail messages and sent letters to Zeager conveying his desire, but the messages went unanswered. Calabrese was then forced to build a new private 'sand mound' septic system on his own property at a total cost of $34,275.33. He also incurred costs related to the construction, such as lost rent and attorney's fees.

Zeager plans on building a new sewage treatment facility on a different tract of land that he owns. At the time of trial, a sewer module has been prepared, submitted and approved but actual construction had not yet begun on the new plant.

Trial court opinion, 1/25/07 at 1–2.

¶ 9 Calabrese and Shirk brought a breach of contract action against Zeager based upon the Agreement entered into by their respective predecessors in title. The matter that is at dispute between the parties centers on whose responsibility it was, under the Agreement, to obtain official permission to tap into Zeager's sewage facility. Apparently, this involved the preliminary submission for approval of a sewage module plan to Strasburg Township, pursuant to its ordinances and to the regulations of the Pennsylvania Department of Environmental Resources.[3] The trial court determined that, under the terms of the Agreement, it was the responsibility of Calabrese and Shirk to obtain official approval of the modification. Upon review, we disagree.

¶ 10 We begin our analysis with our standard of review:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Kraisinger v. Kraisinger,* 928 A.2d 333, 339 (Pa.Super.2007), quoting *Stamerro v. Stamerro,* 889 A.2d 1251 (Pa.Super.2005).

¶ 11 According to Calabrese and Shirk, the following clause of the Agreement indicates that it was Zeager's responsibility to obtain the necessary approvals:

[2. Acceptance and Treatment of Sewage.]

(c) At the Plant, [Zeager] shall treat [Calabrese and Shirk]'s Discharge in accordance with all federal, state, and local laws and regulations applicable thereto, and in accordance with standards established by the United States Environmental Protection Agency ('EPA'), and the Pennsylvania Department of Environmental Resources ('DER'), as such standards are from time to time promulgated, sufficient to permit discharge into the waters of the Commonwealth of Pennsylvania, and [Calabrese and Shirk]'s Discharge shall be so discharged. Further, [Zeager] shall assure that all wastewater treated at the Plant is treated in accordance with all federal, state, and local laws and regulations applicable thereto, and in accordance with

3. *See* Ordinance 43, Township of Strasburg; 25 Pa.Code § 71.1 *et seq.*

standards promulgated by the EPA and DER, sufficient to permit discharge into the waters of the Commonwealth of Pennsylvania. *At all times and under all conditions, [Zeager] shall assure that the Plant has sufficient treatment capacity to treat (and shall reserve sufficient treatment capacity), shall be capable of so treating, and shall be legally authorized to so treat [Calabrese and Shirk]'s Discharge.*

Agreement at p. 3 (emphasis added). Calabrese and Shirk also rely upon the following indemnification clause to support their cause of action:

[4. Payments.]

 (f) [Zeager] shall indemnify, defend, and hold [Calabrese and Shirk] harmless from and against all cost (including attorneys' fees and litigation costs), penalties, fines, expenses, and liability he may incur on account of [Zeager]'s failure to comply fully with his obligations hereunder, including without limitation costs, expenses, fines, and liability incurred because of a violation of laws, regulations, or governmental standards relating to the treatment or discharge of sewage, waste, or wastewater, and costs and expenses incurred for alternate disposal or treatment of [Calabrese and Shirk]'s Discharge[.]

Agreement at p. 8.

¶ 12 Zeager, on the other hand, asserts that the following clauses put the responsibility for obtaining approval in the hands of Calabrese and Shirk:

 2. Acceptance and Treatment of Sewage. From and after the date hereof:

 (a) *[Calabrese and Shirk] shall be permitted to construct within the above-described easement sanitary sewer lines and other facilities to transport wastewater from [Calabrese and Shirk]'s Real Estate to the Plant,* and [Zeager] shall connect such sewer lines to the Plant.

 . . . .

[4. Payments]

 (c) [Zeager] shall at all times maintain the Plant, and all parts thereof, in good repair and operating condition, and shall operate the Plant in accordance with all applicable governmental statutes, regulations, rules, and standards. *[Calabrese and Shirk] shall at all times maintain all sewer lines, pumps, and other facilities installed by him, including without limitation, the flow meter installed to monitor [Calabrese and Shirk]'s Discharge, in good repair and operating condition, and in accordance with all applicable governmental statutes, regulations, rules, and standards.*

Agreement at pp. 2 and 6 (emphasis added).

¶ 13 Both parties agree that the Agreement permitted Calabrese and Shirk to construct a pipe to connect with Zeager's sewage plant and required Zeager to accept and treat the sewage. The parties disagree, however, regarding which party bore the responsibility under the Agreement for obtaining the necessary government approvals to allow Calabrese and Shirk to connect their sewage pipe to Zeager's plant (specifically, an "approved sewer module" from the Pennsylvania Department of Environmental Resources). The trial court decided that Calabrese and

Shirk bore this responsibility and entered judgment in Zeager's favor.

¶ 14 We find that the highlighted portion of paragraph 2(c) unambiguously requires Zeager to have legal authorization in place to accept Calabrese and Shirk's sewage discharge. The highlighted portion further makes clear that this obligation required Zeager to maintain this legal authorization "at all times and under all conditions," and, therefore, when Calabrese and Shirk notified Zeager that they intended to connect a sewage pipe to Zeager's plant, it was Zeager's responsibility under paragraph 2(c) to obtain the required approvals from the DER. Paragraph 2(c) plainly requires Zeager to treat the Calabrese and Shirk discharge in accordance with all federal, state, and local laws and regulations, and it would not be possible for Zeager to do so without obtaining the required "approved sewer module" from the DER.

¶ 15 Zeager contends that paragraph 4(c) is "the only paragraph in the entire Agreement that explicitly recites requirements as to which party has the burden relating to governmental approvals for the Calabrese and Shirk sewer line, pumps, and other facilities installed by Calabrese and Shirk (as distinct from the Zeager plant and plant-related facilities)." (Appellee's brief at 12.) We differ with this interpretation.

¶ 16 By its terms, paragraph 4(c) does not require Calabrese and Shirk to obtain government approvals necessary for the Zeager plant to treat Calabrese and Shirk discharge. Instead, paragraph 4(c) requires Calabrese and Shirk to maintain their sewage pipes and other installations (including the flow meter) "in good repair and operating condition, and in accordance with all applicable governmental statutes, regulations, rules and standards." Proper maintenance of the Calabrese and Shirk pipes and flow meter is not, however, at

issue here, since as a result of Zeager's breach of his obligation to provide legal authorization at all times for treatment of sewage discharge under paragraph 2(c), said sewage pipes and flow meter were never installed. A maintenance obligation cannot begin until the equipment in question has been installed.

¶ 17 Accordingly, because we find that the trial court misinterpreted the terms of the Agreement and that the Agreement unambiguously assigns to Zeager the responsibility for obtaining the governmental approval for connecting Calabrese and Shirk's sewage line to Zeager's sewage treatment facility, we will reverse the decision below.

¶ 18 Judgment reversed. Jurisdiction relinquished.

¶ 19 POPOVICH, J. files a Concurring Statement.

CONCURRING STATEMENT BY POPOVICH, J.:

¶ 1 I agree with my esteemed colleagues that Zeager breached the agreement. I write separately regarding our Court's finding that the appeal was timely filed. I agree that, in this instance, the late filing could be determined to be a result of a breakdown in the operation of the court. I find it important that the Lancaster County Prothonotary web site did not contain a disclaimer providing notice to the public that the Prothonotary did not vouch for the veracity of the information displayed in the online docket. Accordingly, I agree that the appeal should not be quashed as untimely filed.