J-A14022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JOHN J. CALABRESE AND DEBORAH J. SHRIK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| P. THOMAS ZEAGER | |
| Appellant | No. 1849 MDA 2014 |

Appeal from the Judgment Entered October 14, 2014
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): Cl-04-05070

BEFORE:  BENDER, P.J.E., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED JUNE 01, 2015**

Appellant P. Thomas Zeager appeals from the order of the Lancaster County Court of Common Pleas granting summary judgment in favor of Appellees John J. Calabrese and Deborah J. Shirk, entering judgment in favor of Calabrese and Shirk, and awarding damages in the amount of $158,667.22.[1]  We affirm the grant of Calabrese and Shirk's motion for summary judgment.  We remand for the trial court to award an offset for costs Calabrese and Shirk would have paid to connect to Zeager's sewage treatment plant.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court awarded $50,372.83 in damages, $20,071.74 in statutory interest, $3,378.25 in costs of litigation, and $84,844.40 in legal fees.

The trial court summarized the factual and procedural history as follows:

> In 1991, Edwin G. Hershey owned a hotel and restaurant complex known as Hershey Farms on Route 896 in Strasburg Township, Lancaster County. As public sewer was not available in that area, Hershey built his own sewage treatment plant on his property. Sanford M. Groff owned an adjoining retail property. On November 22, 1991, Hershey and Groff entered into a Sanitary Sewer Easement and Sewage Treatment Agreement (the Agreement) which generally stated that Groff was permitted to use the sewage plant located on Hershey's land in exchange for $25,000.00. Specifically, the Agreement granted an easement across Hershey's land for the installation, repair, maintenance and operation of an eight[-]inch sewer line which Groff could use to construct sewer lines to connect to the plant at such time in the future as Groff deemed necessary. The Agreement between the parties had an explicit provision that it was Hershey's obligation to be physically and legally capable of allowing Groff to hook into the facility "at all times and under all conditions." The Agreement also contained an indemnification clause providing that should Hershey breach the agreement, Groff would be entitled to all costs, damages, and attorney's fees resulting from the breach.
>
> Subsequent to the Agreement, Groff sold his property to Calabrese [and Shirk], and Hershey sold his land to Zeager. At the time of sale, Groff had not connected to the sewage treatment plant located on Hershey's property. Calabrese [and Shirk] and Zeager remained obligated by the Agreement, however, which was binding on successors in title to Groff and Hershey.
>
> In the fall of 2003, Calabrese [and Shirk] entered into a lease agreement with a new retail tenant which required renovation and enlargement of [their] building. Calabrese [and Shirk's] existing on-lot septic system was incapable of handling the required additional capacity generated by the expansion. Therefore, Calabrese [and Shirk] decided that [they] wished to tap into the sewer treatment plant on the Zeager property. Calabrese [and Shirk] made

multiple attempts by telephone and letter to contact Zeager to tell him that [they] now wanted to utilize the sewer capacity that had been paid for years before by Groff. Calabrese [and Shirk] eventually learned that Zeager did not have the necessary legal approvals to add Calabrese [and Shirk's] discharge. Calabrese [and Shirk were] then forced to construct a new "sand mound" septic system on [their] own property at a total cost of $34,275.33. [They] also incurred costs related to the construction, such as lost rent and attorney's fees. Repeated requests were made to Zeager to pay all such costs of the new system (as required by the indemnification provision in the Agreement). Zeager refused.

Calabrese [and Shirk] brought a breach of contract action against Zeager on May 28, 2004, based upon the Agreement entered into by their respective predecessors in title. Both parties agreed that the Agreement permitted Calabrese [and Shirk] to construct a pipe to connect with Zeager's sewage plant and required Zeager to accept and treat the sewage. The parties disagreed, however, regarding which party bore the responsibility under the Agreement for obtaining the necessary government approvals to allow Calabrese [and Shirk] to connect [their] sewage pipe to Zeager's plant. This apparently involved the preliminary submission for approval of a sewage module plan to Strasburg Township, pursuant to its ordinances and to the regulations of the Pennsylvania Department of Environmental Resources.

After the pleadings were closed, this matter was assigned to the Honorable Paul K. Alison for a pretrial conference on July 29, 2005. After four joint motions for trial continuances by the parties, the case eventually proceeded to a non-jury trial before Judge Allison on September 19 and 20, 2006. Following the filing of proposed findings of fact and conclusions of law by the parties, Judge Allison rendered a decision on January 25, 2007 (docketed on January 26, 2007). The trial court concluded that, under the terms of the Agreement, Calabrese [and Shirk] bore the responsibility for obtaining official approval of the connection to Zeager's sewage plant, and judgment was entered in Zeager's favor.

Calabrese [and Shirk] filed a timely post[-]trial motion, which was denied by Judge Allison on March 19, 2007. Thereafter, Calabrese [and Shirk] appealed the trial court's ruling to the Superior Court. On May 22, 2009, a three-judge panel of the Superior Court reversed the trial court in a published opinion.

The appellate court held that "the trial court misinterpreted the terms of the Agreement and that the Agreement unambiguously assigns to Zeager the responsibility for obtaining the governmental approval for connecting Calabrese and Shirk's sewage line to Zeager's sewage treatment facility."

Zeager filed an application for reconsideration on June 5, 2009, which was denied by the Superior Court on August 4, 2009. No petition for allowance of appeal was filed with the Supreme Court of Pennsylvania, and the case was thereafter remanded to the trial court.

Following the remand, Calabrese [and Shirk] filed a motion for judgment on September 13, 2011, to which Zeager responded with a cross motion for judgment on October 3, 2011. Zeager also filed on October 31, 2011, a motion to amend his answer to the complaint to plead actual planning and construction costs for a new sewage treatment plant built in 2009, following the remand of this case, as an offset to any of Calabrese [and Shirk's] damages. Finally, a motion for post remand evidentiary hearing was filed by Zeager on October 31, 2011.

These matters were assigned to the Honorable Jeffery D. Wright on December 15, 2011, following Judge Allison's retirement from the bench. Following a status conference on February 27, 2012, Judge Wright sent the parties to mediation through the Lancaster Bar Association. The mediation concluded without a successful resolution. Two subsequent attempts at mediation by Judge Wright in September and October of 2012 ended again without success.

This case was then reassigned to the Honorable Louis J. Farina. Following a case management conference on January 23, 2013, Judge Farina entered an order docketed on January 25, 2013, which allowed Zeager to amend his answer to plead a claim for offset damages related to the

post[-]trial construction of his new sewer plant, set a discovery schedule, and invited dispositive motions. The Order further noted, in an apparent response to Zeager's motion for a post[-]remand evidentiary hearing, that "[a]ny bench trial will be limited only to a determination of the amount of damages to which [Calabrese and Shirk are] entitled resulting from [Zeager's] breach of contract. [Zeager's] liability to [Calabrese and Shirk] for breach of contract was finally determined by the judgment of the [S]uperior [C]ourt. The only remaining issue is damages, allowable attorney's fees and costs."

On November 12, 2013, Calabrese [and Shirk] filed a motion for summary judgment. Following the filing of briefs by the parties, the case was reassigned to this [c]ourt on May 9, 2014. Oral argument on the summary judgment motion was scheduled for August 4, 2014, and then rescheduled, upon request of Zeager, to September 19, 2014. On October 14, 2014, I entered an [o]rder granting Calabrese [and Shirk's] [m]otion for [s]ummary [j]udgment and entered judgment in favor of Calabrese [and Shirk] and against Zeager as follows: (1) damages in the amount of $50,372.83; (2) statutory interest from March 23, 2007, through November 12, 2013, in the amount of $20,071.741 (3) costs of litigation in the amount of $3,378.25; and (4) legal fees through November 12, 2013, totaling $84,844.40. The total judgment was $158,687.22, before additional legal fees and interest to be awarded in an amount to be determined upon submission of a supplemental bill of costs and fees by Calabrese within ten days of the [o]rder. Calabrese [and Shirk's] supplemental bill of costs was filed on October 23, 2014.

The same date, Zeager filed a post[-]trial motion challenging the [c]ourt's order granting summary judgment. However, because Pa.[]R.Civ.P. 227.1(a) states that a post[-]trial motion does not apply to summary judgment motions, Zeager then filed a direct appeal to the Superior Court on November 3, 2014.

Trial Court Opinion, 12/16/2014, at 1-7. Both Appellant and the trial court

complied with Pennsylvania Rule of Appellate Procedure 1925.

Zeager raises the following claims on appeal:

A. Did the [t]rial [c]ourt incorrectly determine that, post-remand, it was precluded from reviewing the issue of whether [Calabrese and Shirk] gave Zeager sufficient notice of [Calabrese's and Shirk's] desire to connect, the evidence of record establishing that [Calabrese and Shirk] did not give Zeager reasonable notice under the governing circumstances?

B. Where the trial court acknowledged that damages offsets existed, was it error for the [t]rial [c]ourt to not reduce its damages award by the amount of the offsets, in particular offsets relating to the contractual liability [Calabrese and Shirk] would have had for new plant reconstruction had [Calabrese and Shirk] connected to the old plant?

Appellant's Brief at 4.

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa.2010) (quoting ***Atcovitz v. Gulph Mills Tennis Club, Inc.,*** 812 A.2d 1218, 1221 (Pa.2002)). A "trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party" and "must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." ***Id.*** (citing ***Toy v. Metropolitan Life Ins. Co.,*** 928 A.2d 186, 195 (Pa.2007)). Therefore, a trial court "may only grant summary judgment 'where the right to such judgment is clear and free from all doubt.'" ***Id.*** (quoting ***Toy***, 928 A.2d at 195). This Court "may reverse a grant of summary judgment if there has been an error of law or an abuse of

discretion." *Id.* (quoting *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902–03 (Pa.2007)).

Zeager maintains that although this Court in the prior appeal found that he breached the Agreement, it did not address his affirmative defense that it was impossible for him to comply with the Agreement because Calabrese and Shirk provided insufficient notice of their desire to use his plant. Appellant's Brief at 14-15, 15 n.2. Zeager maintains this Court "recognize[d] Calabrese and Shirk's notice (or lack thereof) as an issue," but "made no pronouncement as to whether Calabrese and Shirk did or did not provide sufficient notice to Zeager." Appellant's Brief at 14-15. Zeager argues the trial court erred when it failed to address the notice issue following remand from our May 22, 2009 decision. We find the law of the case doctrine prohibited the trial court from considering this issue.

The law of the case doctrine "provides that if an appellate court has considered and decided a question on appeal, neither that court nor any trial court may revisit that question during another phase of the same case." *Gateway Towers Condominium Assoc. v. Krohn*, 845 A.2d 855, 861 (Pa.Super.2004).[2] "The doctrine is designed to promote judicial economy,

---

[2] The distinct rules that make up the law of the case doctrine are:

> (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the

*(Footnote Continued Next Page)*

uniformity of decision making, protect the settled expectations of the parties, maintain the consistency of the litigation and end the case." ***Id.*** (quoting ***Peden v. Gambone Bros. Dev. Corp.***, 798 A.2d 305, 310 (Pa.Cmwlth.2002)).

The Agreement contained the following provision regarding government approvals:

> [2. Acceptance and Treatment of Sewage.]
>
> (c) At the Plant, [Zeager] shall treat [Calabrese and Shirk's] Discharge in accordance with all federal, state, and local laws and regulations applicable thereto, and in accordance with standards established by the United States Environmental Protection Agency ('EPA'), and the Pennsylvania Department of Environmental Resources ('DER'), as such standards are from time to time promulgated, sufficient to permit discharge into the waters of the Commonwealth of Pennsylvania, and [Calabrese and Shirk]'s Discharge shall be so discharged. Further, [Zeager] shall assure that all wastewater treated at the Plant is treated in accordance with all federal, state, and local laws and regulations applicable thereto, and in accordance with standards promulgated by the EPA and DER, sufficient to permit discharge into the waters of the Commonwealth of Pennsylvania. **At all times and under all conditions, [Zeager] shall assure that the Plant has sufficient treatment capacity to treat (and shall**

*(Footnote Continued)* ──────────────

> resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

***In re Estate of Elkins***, 32 A.3d 768, 776 (Pa.Super.2011) (quoting ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa.1995)).

> **reserve sufficient treatment capacity), shall be capable of so treating, and shall be legally authorized to so treat [Calabrese and Shirk]'s Discharge.**

Sanitary Sewer Easement and Sewer Treatment Agreement, dated Nov. 26, 1991, at p.3 ("Agreement") (emphasis added).

In the prior appeal, this Court found Zeager breached the Agreement. *Calabrese v. Zeager*, 976 A.2d 1151, 1151-52 (Pa.Super.2009). It further found:

> Both parties agree that the Agreement permitted Calabrese and Shirk to construct a pipe to connect with Zeager's sewage plant and required Zeager to accept and treat the sewage. The parties disagree, however, regarding which party bore the responsibility under the Agreement for obtaining the necessary government approvals to allow Calabrese and Shirk to connect their sewage pipe to Zeager's plant (specifically, an "approved sewer module" from the Pennsylvania Department of Environmental Resources). The trial court decided that Calabrese and Shirk bore this responsibility and entered judgment in Zeager's favor.
>
> We find that the highlighted portion of paragraph 2(c) unambiguously requires Zeager to have legal authorization in place to accept Calabrese and Shirk's sewage discharge. The highlighted portion further makes clear that this obligation required Zeager to maintain this legal authorization "at all times and under all conditions," and, therefore, when Calabrese and Shirk notified Zeager that they intended to connect a sewage pipe to Zeager's plant, it was Zeager's responsibility under paragraph 2(c) to obtain the required approvals from the DER. Paragraph 2(c) plainly requires Zeager to treat the Calabrese and Shirk discharge in accordance with all federal, state, and local laws and regulations, and it would not be possible for Zeager to do so without obtaining the required "approved sewer module" from the DER.

*Id.* at 1155-56.

In the prior appeal, Zeager stated in his appellate brief:

Zeager joins in the portion of the Statement of the Case related to the procedural history in this matter set forth on page 6 and through the first full paragraph on page 7 of the Calabrese Brief. It should also be noted that, at trial, evidence on additional issues was presented, the issues including:

1. Did Calabrese give sufficiently timely notice to Zeager of his desire to connect the Calabrese property to the Zeager sewage plant?

2. If Zeager was found to be in breach of the 1991 Sanitary Sewer Easement and Sewage Treatment Agreement (the "Agreement"), what damages did Calabrese incur?

3. Must any or all of Calabrese's damages be offset by amounts Calabrese saved by not hooking up to the Zeager sewage plant?

Because the [t]rial [c]ourt found Zeager did not breach the Agreement, the [t]rial [c]ourt did not need to address the above issues.

Appellee Brief, filed 8/27/2007, at 2. Zeager further wrote:

Alternatively, if this Court is persuaded that the [t]rial [c]ourt did commit some error in interpreting the Agreement, this Court must remand this matter to the [t]rial [c]ourt for such additional proceedings on the contract interpretation issue as this Court orders, as well as the issues raised before the [t]rial [c]ourt but not decided by the [t]rial [c]ourt as stated in the Procedural History (Part II. A.) of this Brief (timeliness of Calabrese notice, damages, and damages offset).

*Id.* at 16. Zeager also discussed the evidence he believed established Calabrese and Shirk failed to provide notice, e.g., the permit process would take 6-12 months, Calabrese and Shirk did not write to Zeager until

- 10 -

November 2003, and Calabrese and Shirk submitted plans for an onsite sewer maintenance system. *Id.* at 4-6.

Calabrese and Shirk's appellate brief in the prior appeal discussed the evidence of the notice they provided in the course of arguing that Zeager breached the contract because he failed to obtain the legal authorization. Appellant's Brief, filed July 26, 2007, at 24-25.

This Court found Zeager breached the Agreement by failing to obtain the necessary permits after Calabrese and Shirk notified him they would use his sewer plant. *Calabrese*, 976 A.2d at 1156. Before reaching this decision, we reviewed the arguments relating to notice or lack thereof in the parties' briefs. Further, we conducted a plenary review of the record, including the trial transcripts, which contained testimony regarding the notice provided, and the Agreement, which provided that Zeager shall be legally authorized to treat Calabrese and Shirk's discharge "[a]t all times and under all conditions." Because we considered and decided the notice issue on the prior appeal, the law of the case doctrine precluded the trial court from revisiting this issue and Zeager's claim lacks merit.

Zeager also challenges the trial court's damages calculation, arguing Calabrese and Shirk saved money when they used an on-site system rather than Zeager's sewage treatment plant because they did not have to pay connection costs or maintenance and operation costs. Appellant's Brief at 27. He further claims Calabrese and Shirk saved the costs they would have

owed Zeager for the "re-construction" of Zeager's sewer management system had they connected to the system.  *Id.* at 28.

The Supreme Court of Pennsylvania has stated:

> Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

*Helpin v. Trustees of Univ. of Pa.*, 10 A.3d 267, 270  (Pa.2010) (quoting *Ferrer v. Trustees of the University of Pennsylvania*, 825 A.2d 591, 610 (Pa.2002)).  A damage award should "place the non-breaching party 'as nearly as possible in the same position [it] would have occupied had there been no breach.'"  *Id.* (quoting *Lambert v. Durallium Products Corp.*, 72 A.2d 66, 67 (Pa.1950)).  "The measure of damages for breach of contract is compensation for the loss sustained. The aggrieved party can recover nothing more than will compensate him."  *Id.* (quoting *Lambert*, 72 A.2d at 67 (emphasis deleted)).

Zeager claims the damages award should be offset by the amount Calabrese and Shirk saved by not connecting to Zeager's plant, including the operation and maintenance costs (also referred to as sewage process charges) and the connection costs (also referred to as trenching costs). Appellant's Brief at 29-31.

- 12 -

Calabrese and Shirk are paying operational and maintenance costs associated with the sewage treatment facility they constructed when unable to access Zeager's plant. They did not include the operational and maintenance costs in the damages sought. Because Calabrese and Shirk are paying operational and maintenance costs, and such costs were not part of the damages award,[3] the trial court properly declined to deduct these costs from the damages award.

Zeager next claims the damages award should be offset by the connection costs Calabrese and Shirk would have spent had they connected to Zeager's plant. We agree.

The Agreement provided:

> [Calabrese and Shirk] shall be permitted to construct within the above-described easement sanitary sewer lines and other facilities to transport wastewater from [Calabrese and Shirk's] Real Estate to the Plant, and [Zeager] shall connect such sewer lines to the Plant.

Agreement at ¶ 2(a). Further, at trial Calabrese testified that if he connected to Zeager's plant, the Agreement required him to install the sewage line and he would bear the cost of such installation. N.T., 9/19/2006, at 99.

---

[3] Operation and maintenance costs do not appear on the list of damages claimed. **See** Joint Trial Exhibit No. 53.

Zeager's breach of the Agreement forced Calabrese and Shirk to construct their own treatment facility. By building their own treatment facility, however, they saved the costs they would have owed for connecting to Zeager's sewage plant. Therefore, to make them whole for Zeager's breach, they are entitled to the cost they spent on their facility, less the connection costs they would have owed had they connected to Zeager's plant.

Calabrese and Shirk argue they still are entitled to connect to Zeager's plant. Therefore, if the connection costs are deducted now, and Calabrese and Shirk later connect to Zeager's plant, they would be paying those costs twice. Appellee's Brief at 8. This argument, however, is speculative, as it is unclear whether Calabrese and Shirk will seek to connect to Zeager's plant in the future.[4] Moreover, whether Calabrese and Shirk will connect to Zeager's plant is made even more speculative because Zeager replaced the original sewage treatment plant with a new sewage treatment facility at a new location. *See* Opinion, 12/15/2014, at 17, 16 n.10; Appellant's Brief at 28, 33-35. Therefore, we find the court erred in not deducting the connection costs from the damages award. We leave it to the trial court to calculate the connection costs offset on remand.

_____

[4] We need not address whether Calabrese and Shirk would be entitled to reimbursement of the connection costs offset in the event they later connect to Zeager's plant.

- 14 -

Zeager also maintains Calabrese and Shirk are liable for re-construction costs. We disagree.

The Agreement provided:

> After connection of the sewer lines and other facilities installed to transport the [Calabrese's and Shirk's] discharge to the Plant, [Calabrese and Shirk] shall pay to [Zeager] a share of repair, reconstruction, and equipment replacement expenses incurred directly in connection with the operation of the plant and which are of a character that must be capitalized under generally accepted accounting standards ("Capital Improvements"), but such Capital Improvements shall not include improvements, additions and repairs initially made in order to accommodate and treat the [Calabrese's and Shirk's] Discharge or to increase the Sewer Plant's capacity for treatment.

Agreement, at 6.

In 2008-2009, after trial, Zeager replaced his sewer treatment plant. He claims the amount Calabrese and Shirk allegedly would have owed had they been connected to Zeager's plant ($78,000.00) should be offset against the damages award. Appellant's Brief at 28-29. This claim fails. Calabrese and Shirk never connected to the plant and, therefore, this provision, which applies only following connection to the plant, is inapplicable.

Further, a new plant is not a "capital improvement." As the trial court stated:

> [S]uch "capital improvements" do not encompass a brand new multi-million dollar sewer treatment facility at a completely new and separate site distinct from the location of Zeager's original treatment plant. This was not a repair, reconstruction, or restoration of the old facility as envisioned by the Agreement. Zeager's counsel

- 15 -

acknowledged at the trial in this matter that Zeager was "building a new plant" that was separate and distinct from the "old plant." It is disingenuous and incongruous of Zeager to continually refer to the "reconstruction" of a "new sewage treatment plant."

Trial Court Opinion, 12/15/14, at 17 (internal citations omitted).

Moreover, even if it were a "capital improvement," Calabrese and Shirk would not have been responsible for the cost. Pursuant to the agreement, Calabrese and Shirk are not responsible for capital improvements that increase the capacity of the plant. Agreement at ¶ 4(d). Applying this provision, the trial court reasoned:

Zeager's expert engineer, McCorkle, testified that the new plant was necessary for the growth of Zeager's business, Hershey Farms, and Sight & Sound Theater, another adjoining property which also contracted for the use of the sewage treatment facility. Post[-]trial discovery further revealed that Zeager had granted the right to access and utilize the new plant to Keystone Custom Homes for an entirely new residential development. The new plant more than tripled the capacity of the original plant from 35,000 gallons per day of discharge to 110,000 gallons of sewage per day. Clearly, the new plant was constructed for the purpose of significantly increasing the amount of treatment capacity that Zeager controlled. Thus, pursuant to subparagraph 4(d) of the Agreement, Calabrese [and Shirk are] not obligated to contribute to the costs of such "improvements, additions and repairs" to increase the plant's capacity.

Opinion, 12/15/14, at 17-18.

Order affirmed in part and reversed in part. Remanded for the trial court to offset damages in the amount of costs Calabrese and Zeager would have paid to connect to Zeager's plant. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2015