J-A30041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GAIL P. VALORA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM M. VALORA | |
| Appellant | No. 241 MDA 2016 |

Appeal from the Order Entered January 5, 2016
In the Court of Common Pleas of Clinton County
Civil Division at No: 2012-00839

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:              **FILED FEBRUARY 09, 2017**

Appellant, William M. Valora, appeals from the January 5, 2016 order denying his petition to open a divorce decree.  We affirm.

The record reflects that the parties were married on December 27, 2003 and separated during the summer of 2010.  Appellee, Gail P. Valora filed a complaint in divorce on July 18, 2012.  At a March 12, 2013 pre-trial conference, the parties agreed that the marital value of Appellee's Pennsylvania State Employee Retirement System ("PSERS") account, a defined benefit pension plan, was $23,488.69.  The parties incorporated that figure into their Marital Settlement Agreement ("MSA"), and the June 10, 2013 divorce decree incorporated the MSA.  Appellant subsequently learned from an actuary that that the present value of Appellee's PSERS account was $117,689.00.

On November 7, 2014, Appellant filed a petition to vacate the divorce decree. The trial court conducted a hearing on July 28, 2015. On January 5, 2016, the trial court entered an order denying Appellant's petition, finding that Appellee and her counsel engaged in no fraud, and nothing prevented Appellant from discerning the actuarial value of Appellee's PSERS account prior to entry of the final decree.

On February 4, 2016, the thirtieth and final day in the appeal period,[1] Appellant's counsel faxed a notice of appeal to the Clinton County Prothonotary's office. She also mailed a paper copy of the notice of appeal. The Clinton County Prothonotary received the mailed copy on February 8, 2016, after the appeal period expired. At the direction of the trial court, the prothonotary docketed the notice of appeal as received on February 8, 2016. On February 16, 2106, the trial court filed an opinion recommending that this Court quash this appeal. According to the trial court's opinion, Appellant's counsel spoke by telephone with the Clinton County Prothonotary and received permission to transmit the notice of appeal by facsimile. As the trial court correctly notes, Rule 205.1 of the Pennsylvania Rules of Civil Procedure requires any filing to be mailed or hand delivered to a local prothonotary. Pa.R.C.P. No. 205.1. That rule does not authorize filing by fax. Appellant relies on Rule 205.3, which permits filing a facsimile **copy** of

---

[1] **See** Pa.R.A.P. 903(a).

a document. Pa.R.C.P. No. 205.3(a). A note to Rule 205.3(a) provides: "This rule **does not authorize the filing of legal papers** with the prothonotary **by facsimile transmission**, but, rather, **authorizes the filing of a** non-original **facsimile** or other **copy**." Pa.R.C.P. No. 205.3(a), note (emphasis added). The trial court opined that Appellant's counsel and the Clinton County Prothonotary's office did not seek court permission to excuse compliance with Rule 205.1, and that 205.3 plainly does not authorize filing of a document by facsimile. The trial court's analysis of Rules 205.1 and 205.3 is correct. Neither Rule authorizes transmission of a document to the prothonotary by facsimile, and neither rule authorizes a prothonotary to excuse noncompliance.

Nonetheless, counsel would construe the untimely notice of appeal as a "breakdown in the court process," based on the prothonotary's representation that it would accept the notice of appeal by facsimile. Appellant also cites a note to Rule of Appellate Procedure 105(b) to grant relief from filing deadlines "in the case of fraud or a breakdown in the process of a court." Pa.R.A.P. 105(b), note. A breakdown in the process of a court can occur, for example, where an officer of the court fails to notify a party of his or her rights. *See Commonwealth v. Patterson*, 940 A.2d 493 (Pa. Super. 2007), *appeal denied*, 960 A.2d 838 (Pa. 2008). We do not believe a breakdown in court process occurs where an attorney attempts to escape compliance with the Rules of Civil Procedure by alleging permission

- 3 -

to do so from unnamed, unauthorized court personnel. ***See Cris V. Wise***, 781 A.2d 1156, 1159 (Pa. 2001) (noting that a party may obtain a *nunc pro tunc* appeal in an "extraordinary" case where the untimely appeal results from "non-negligent" circumstances). Instantly, counsel acted at her peril by waiting until day thirty and transmitting a notice of appeal by facsimile. ***See Cubano v. Sheehan***, 146 A.3d 791, 794 (Pa. Super. 2016) (quashing an appeal where counsel waited until day 29 to send the notice of appeal to the prothonotary by Federal Express overnight delivery—a method not designated as acceptable in the Rules of Procedure).

Fortunately for Appellant, the certified docket does not clearly reflect that the prothonotary provided counsel with notice of the trial court's January 5, 2016 order in accordance with Pa.R.C.P. No. 236. Rule 236(a) requires the prothonotary to provide immediate written notice of an order to counsel of record, and Rule 236(b) requires the prothonotary to record the giving of notice in the docket. Appellate Rule 108(b) provides that the date of entry of an order is the date on which the prothonotary provides the Rule 236(b) notice. Pa.R.A.P. 108(b). Thus, in this case, the appeal period did not begin to run and the January 5, 2016 order technically was not appealable as of February 8, 2016, the day the prothonotary docketed Appellant's notice of appeal. ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999); ***Calabrese v. Zeager***, 976 A.2d 1151, 1152 (Pa. Super. 2009). Nonetheless, we need not remand for proper notice. Instead,

- 4 -

we "regard as done what should have been done" and treat the appeal as timely. ***Vertical Res. v. Bramlett***, 837 A.2d 1193 (Pa. Super. 2003).

We now turn to the merits. An order denying a motion to vacate a divorce decree is a final appealable order. ***Danz v. Danz***, 947 A.2d 750, 751 n.1 (Pa. Super. 2008). We review the trial court's order for an abuse of discretion. ***Id.*** at 752. Appellant raises eight assertions of error, which we will not reproduce verbatim. One of the eight addressed the timeliness of this appeal. Another three assertions of error address the transfer of this matter from Judge Craig P. Miller to Judge Michael F. Salisbury. Judge Miller presided over a March 3, 2015 hearing, at the conclusion of which he ordered that another hearing would take place. Subsequently, Judge Miller *sua sponte* recused himself. Judge Salisbury presided over a July 28, 2015 hearing at which wife's counsel testified.

Appellant complains that Judge Salisbury is a former member of the firm representing Appellee. Appellant's Brief at 25 n.4. Judge Salisbury explained that his membership at the firm ended long ago, when the two attorneys currently representing Appellee were in grade school. Trial Court Opinion, 3/9/16, at 1. Judge Salisbury further noted that Appellant did not move for Judge Salisbury's recusal. ***Id.*** Likewise, Appellant's brief does not contain any legal argument on recusal. Absent any recusal motion from Appellant, we need not address this issue further.

Appellant also argues that Judge Salisbury improperly refused to address the merits after Judge Miller determined at a prior hearing that the merits were properly before the Court. As we will explain below, the trial court's statutory authority to consider Appellant's petition to vacate the divorce decree was contingent on Appellant's ability to demonstrate extrinsic fraud as set forth in 23 Pa.C.S.A. § 3332. We agree with the trial court that Appellant failed to demonstrate fraud. The trial court therefore had no statutory authority to consider this matter further.

Appellant's four remaining assertions of error challenge the trial court's finding that Appellant failed to prove extrinsic fraud under § 3332. We will address these assertions of error together.

Section 3332 provides:

A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. **A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree.** Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa.C.S.A. § 3332.

Appellant did not file his motion to vacate the decree within thirty days of the decree, as would have been necessary for the court to proceed under § 5505. Appellant's motion fell within the five-year deadline for alleging that the decree was void because of extrinsic fraud. As noted above, the parties agreed that the marital value of Appellee's PSERS account was $23,488.69. They arrived at that figure by subtracting the account's date of marriage value ($8,646.86) from its date of separation value ($32,135.55). Pursuant to the MSA, the parties agreed to rollover $15,000 from the PSERS account to an IRA account in Appellant's name. Appellee's PSERS account is a defined benefit pension plan, yet Appellant and his counsel did not retain an actuary to ascertain the present value of Appellee's marital contributions to the plan. Appellant now alleges the present value of the marital contributions is $117,689.00, and he argues that Appellee and her counsel engaged in fraud by failing to explain to Appellant and his counsel that they should have hired an actuary. Further, Appellant claims the parties cannot consummate their agreement to roll over $15,000 from the PSERS account because it is a defined benefit plan rather than a defined contribution plan.

The trial court noted the following:

> [Appellant] argues that [Appellee's counsel] intentionally withheld information from [Appellant's] prior counsel […], and the court with respect to valuation of [Appellee's] PSERS account. However, according to the testimony of [Appellee's counsel] at the July 29, 2015 hearing, he provided [Appellant's] attorney, as well as the court at the time of the pre-trial conference, with all the information that he had in his possession regarding [Appellee's] PSERS account. No evidence was offered

to suggest that [Appellee's counsel] intentionally withheld information from [Appellant's counsel] or the court.

Trial Court Findings of Fact and Decision, 1/5/16, at 3-4. The record supports these findings.

In ***Fenstermaker v. Fenstermaker***, 502 A.2d 185, 188 (Pa. Super. 1992), this Court defined the term "extrinsic fraud" as used in § 3332:[2]

> By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there[.] Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial.

***Fenstermaker v. Fenstermaker***, 502 A.2d 185, 188 (Pa. Super. 1985).

In ***Ratarsky v. Ratarsky***, 557 A.2d 23, 24 (Pa. Super. 1989), *affirmed*, 581 A.2d 1377 (Pa. 1990), the former wife sought to open a

---

[2]  At the time of the ***Fenstermaker*** decision, 23 P.S. § 602 (repealed) governed opening or vacating divorce decrees.

divorce decree based on the former husband's alleged concealment of the cash surrender value of several life insurance policies held in a trust. The parties' attorneys negotiated a property settlement agreement, which they finalized on February 3, 1986. *Id.* at 24. The next day, the former husband notified the trustee that he was revoking the trust and taking possession of the insurance policies. *Id.* For accounting purposes, the trust carried the insurance policies at a book value and market value of $1.00 each. *Id.* at 24. The former wife did not inquire into the policies' cash surrender value, which was considerably higher. *Id.* The trial court granted the former wife's petition to vacate the divorce decree, but this Court reversed: "Even assuming *arguendo* that the appellant did conceal the cash surrender value, the appellant's acts did not constitute extrinsic fraud under the Divorce Code." *Id.* at 25.

A review of the record reveals that the appellant's actions were not tantamount to extrinsic fraud and did not prevent a fair hearing. The property settlement in question was entered into by the parties following almost one year of extensive, counseled negotiations. Appellee's counsel contends he never became aware of the policies' true value because opposing counsel's intimations that a full disclosure in good faith had been made. In fact, a sufficient disclosure of the appellant's assets was made. The appellee was informed of the exact contents of the trust fund, including the precise identity of each insurance policy which was a part of the trust. If counsel wanted to know the value of the policies, all he needed to do was go to the Bank and review them; thereafter, counsel would have had full knowledge of the policies' cash surrender value. However, counsel never saw fit to examine the policies. Appellee's trial counsel must remember that no matter how amiable property settlement negotiations are, they still are adversarial, and counsel has a duty to protect his client's best interests by fully investigating

- 9 -

the extent of the marital assets. No doubt the appellee knew of the policies existence and should have *specifically* inquired concerning their cash surrender value. Certainly, the appellee's trial counsel's performance cannot be imputed to the appellant and labeled as fraud. Accordingly, the lower court had no authority to vacate the divorce decree on the basis of extrinsic fraud.

*Id.* at 26.

We believe **Ratarsky** is directly on point and controlling. The instant record supports the trial court's finding that Appellee and her counsel did not fail to disclose any pertinent information. Appellee provided information from which Appellant could glean the nature and value of Appellee's PSERS account. Here, as in **Ratarsky**, both parties were aware of the assets in question and one party failed to investigate and/or comprehend the value of the assets. Here, as in **Ratarsky**, Appellant's counsel made a significant mistake that Appellant asks us to attribute to Appellee's counsel as fraud. **Ratarsky** teaches that an attorney's deficient performance or failure to investigate the value of an asset cannot be imputed to the other party as fraud.

Appellant argues that **Ratarsky** is distinguishable because Appellee's counsel was clearly aware of Appellant's counsel's mistake. The same was undoubtedly true in **Ratarsky**, where the former husband claimed the insurance policies the day after the parties reached a property settlement agreement. As the **Ratarsky** Court noted, however, "counsel must remember that no matter how amiable property settlement negotiations are,

- 10 -

they still are adversarial, and counsel has a duty to protect his client's best interests by fully investigating the extent of the marital assets." *Id.*

Based on the foregoing, we agree with the trial court's conclusion that Appellant failed to demonstrate extrinsic fraud as defined in *Ratarsky* and *Fenstermaker*. We discern no abuse of discretion in the trial court's decision not to vacate the divorce decree.

Appellant also notes that Judge Miller, prior to his *sua sponte* recusal, placed Appellee's PSERS account in a constructive trust, pursuant to 23 Pa.C.S.A. § 3505(d).[3] We need not express any opinion on the order creating a constructive trust, except to note that its existence does not preclude our affirmance of the trial court's refusal to vacate the divorce

_____

[3] Section 3505(d) provides:

> **(d) Constructive trust for undisclosed assets.--**If a party fails to disclose information required by general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1,000 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. The party in whose name the assets are held shall be declared the constructive trustee unless the court designates a different trustee, and the trust may include any terms and conditions the court may determine. The court shall grant the petition upon a finding of a failure to disclose the assets as required by general rule of the Supreme Court.

23 Pa.C.S.A. § 3505(d).

decree. An action under § 3505 is a distinct cause of action from a petition under § 3332. ***Kozel v. Kozel***, 97 A.3d 767, 770 (Pa. Super. 2014) (citing ***Major v. Major***, 518 A.2d 1267 (Pa. Super. 1986) (*affirmed as modified*, 540 A.2d 529 (Pa. 1988)).

Finally, we note Appellant's argument that the parties' MSA was incorporated, not merged, into the divorce decree. Appellant cites ***Jones v. Jones***, 651 A.2d 157, 158 (Pa. Super. 1994) for the proposition that agreements incorporated into a divorce decree survive as enforceable contracts and are governed by the law of contracts. Appellant's Brief at 31. We need not express any opinion on this argument, other than to note that the present litigation is not a contract action.

Based on all of the foregoing, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2017