IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Stuski,                         :
                    Appellant           :
                                        :
            v.                          :
                                        :
Philadelphia Authority for Industrial   :
Development, CBRE, Inc. and CB           :
Richard Ellis, Inc.                     :
                                        :
            v.                          :
                                        :
JPC Group, Inc. and City of             :
Philadelphia,                           :    No. 1979 C.D. 2016
Department of Public Property           :    Submitted: May 2, 2017


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI,  Senior Judge


OPINION BY
JUDGE COVEY                             FILED: May 25, 2017


            Michael Stuski (Stuski) appeals from the Philadelphia County Common Pleas Court's (trial court) April 11, 2016 order granting the Philadelphia Authority for Industrial Development (PAID), CBRE, Inc. (CBRE) and CB Richard Ellis, Inc.'s (collectively, Defendants) motion for summary judgment (Motion) and dismissing Stuski's complaint (Complaint) with prejudice.  The sole issue before the Court is whether the trial court erred by granting summary judgment in Defendants' favor and dismissing Stuski's Complaint.  After review, we affirm.

            Stuski was employed by the City of Philadelphia (City) Police Department's (Police Department) Traffic Division (Traffic Division).  The Traffic Division has offices in what is known as The Navy Yard (Property), on the second floor of Building 501, 4500 South Broad Street, Philadelphia.  The City's Department

of Public Property (Property Department) leased the Property's second floor and a fenced parking lot for the exclusive use of the Traffic Division's employees (Parking Lot), from PAID pursuant to a March 29, 2004 Agreement of Lease and general terms and conditions attached thereto (2004 Lease). On March 8, 2005, PAID and the City entered into another Agreement of Lease with appended general terms and conditions for additional portions of the Property (2005 Lease).

On February 9, 2013, at approximately 6:40 a.m., Stuski arrived for work, parked in the Parking Lot and, as he got out of his car, slipped and fell on snow and/or ice. Stuski claims that, as a result of the fall, he suffered injuries and damages. On November 5, 2014, Stuski filed the Complaint against Defendants, alleging therein that the Defendants' negligence and/or carelessness caused his injuries. *See* Reproduced Record (R.R.) at 1a-13a. Stuski also asserted in the Complaint that PAID contracted with CBRE to provide the property management services at the Property, and CB Richard Ellis, Inc. was responsible for snow and ice removal from the Parking Lot. Defendants filed an answer and new matter to the Complaint, denying Stuski's allegations.[1] *See* R.R. at 14a-28a. Stuski replied to Defendants' new matter. *See* R.R. at 29a-30a. The parties undertook discovery.

---

[1] By party stipulation, Defendants were granted leave to amend their answer and new matter to include a new matter claim that PAID is a local agency entitled to immunity under what is commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-8542. *See* Certified Record (C.R.) Items 36-37.

Defendants also filed a writ and, thereafter, a third-party complaint joining JPC Group, Inc. (JPC) and the Property Department (collectively, Additional Defendants). *See* C.R. Items 7, 10; *see also* R.R. at 112a-131a. In the third-party complaint, Defendants averred that PAID entered into a service contract with JPC under which JPC was responsible for snow and/or ice removal only from a small parking area that remained under PAID's control (Non-Leased Parking Lot). *See* R.R. at 116a. Additional Defendants filed answers with new matter denying Defendants' averments. *See* C.R. Items 19-20. On March 7, 2016, JPC was dismissed from the case. *See* C.R. Items 41-42. On June 1, 2016, judgment was entered in the City's favor and the case was discontinued as to the City because any claims Stuski had against the City would be barred by the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2708. *See* R.R. at 294a; *see also* C.R. Item 47.

2

Defendants filed the Motion on February 1, 2016, arguing therein that Defendants did not owe Stuski a duty of care since, under the 2004 Lease and the 2005 Lease, it was the City's responsibility to remove snow and/or ice from the Parking Lot. *See* R.R. at 53a-258a. Stuski filed a response to the Motion. *See* R.R. at 259a-292a. On April 11, 2016, the trial court granted the Motion and dismissed Stuski's Complaint with prejudice. *See* R.R. at 293a. Stuski appealed to this Court.[2] The trial court filed its Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (1925(a) Opinion), wherein it explained that Stuski's evidence established that the City, rather than Defendants, were responsible for snow and/or ice removal from the Parking Lot at the time of Stuski's fall. *See* R.R. at 295a-307a.

Initially,

> in order to prevail in a negligence action under common law, the plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages.

*Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Cmwlth. 2011). Moreover,

> [s]ummary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

*Scutella v. Cnty. of Erie*, 938 A.2d 521, 526 n.3 (Pa. Cmwlth. 2007). "Summary judgment may be granted only in those cases where the right is clear and free from doubt." *Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001). Accordingly, in order for Stuski's claims against Defendants to survive summary judgment, the

---

[2] Stuski initially appealed to the Superior Court and the matter was thereafter transferred to this Court.

"Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion." *Mandakis v. Borough of Matamoras*, 74 A.3d 301, 302 n.4 (Pa. Cmwlth. 2013).

3

record must, at the very least, establish that Defendants owed Stuski a duty of care. If no duty was owed, Stuski would not be entitled to judgment as a matter of law.

Stuski argues that the trial court erred by granting Defendants' Motion because there existed genuine issues of material fact about whether Defendants owed him a duty of care.[3] Defendants in the Motion contend that "[t]he undisputed evidence . . . demonstrates that the City – not [] Defendants – had the duty to remove snow and ice from the Parking Lot." R.R. at 64a. As the moving party, "[Defendants have] the burden of proving that there is no genuine issue of material fact." *Laich*, 776 A.2d at 1024.

Here, Defendants support their Motion with the City's 2004 Lease (Motion Ex. F), 2005 Lease (Motion Ex. G), witness deposition testimony (Motion Exs. B-D, I-K) and December 14, 2004 emails (Motion Ex. H).[4] There is no dispute that the City leased a portion of the Property from PAID under the 2004 Lease. Section 11.01 of the 2004 Lease specified, in relevant part:

> [**The City**] **shall keep and maintain the entire Leased Premises in good order, condition, and repair** and free of trash and will not commit waste, nuisance or unreasonable annoyance (including without limitation, excessive noise, noxious odors, dust or dirt) to [PAID] or other tenants. [PAID] shall maintain, repair, and replace all fixtures, equipment, improvements and systems in the Leased Premises. [The City] shall reimburse [PAID] for all operation, repair and maintenance costs associated with its occupancy of the Leased Premises . . . .

R.R. at 153a (emphasis added). The 2004 Lease **defined "Leased Premises"** as

> the space in the property known as Building 501, 4500 South Broad Street, Philadelphia, PA as shown on the plan(s) attached as Exhibit 'A' to the General Terms [and

---

[3] "Whether a duty of care is owed to a particular individual is a matter for the court to decide." *Kennedy v. Robert Morris Univ.*, 133 A.3d 38, 41 (Pa. Super. 2016).

[4] Motion Ex. A is Stuski's Complaint (*see* R.R. at 86a-98a), Ex. E is the third-party complaint against the Additional Defendants. *See* R.R. at 112a-131a.

4

> Conditions], constituting the entire second floor, . . . a section in the northeast corner of the basement, . . . **as well as** sole and exclusive use of [**the Parking Lot**].

R.R. at 134a (emphasis added); *see also* R.R. at 181a (2004 Lease Ex. A).

On March 8, 2005, PAID and the City entered into the 2005 Lease for portions of the Property and additional parking spaces not included under the 2004 Lease. Section 11.01 of the 2005 Lease stated, in pertinent part:

> [The City] shall keep and maintain the entire Leased Premises in good order, condition, and repair and free of trash and will not commit waste, nuisance or unreasonable annoyance (including without limitation, excessive noise, noxious odors, dust or dirt) to [PAID] or other tenants. [**The City**] **shall be responsible for all snow plowing and snow removal within the Parking Areas at no cost to** [**PAID**]. [PAID] shall maintain, repair, and replace all fixtures, equipment, improvements and systems in, as well as any structural or roof damage to, the Leased Premises. [The City] shall reimburse [PAID] for all operation, repair and maintenance costs associated with its occupancy of the Leased Premises . . . .

R.R. at 203a. The 2005 Lease defined "Leased Premises" as "the space in [Building 501] as shown on the plan(s) attached as Exhibit 'A' to the General Terms [and Conditions], constituting 4295 rentable square feet on the first floor, in addition to the exclusive use parking areas identified on the attached Exhibit 'B' ('Parking Area')." R.R. at 186a. Exhibit B reflects that **the Parking Areas covered by the 2005 Lease included the newly-leased parking spaces <u>and</u> the Parking Lot** (designated "Police Parking Lot"). *See* R.R. at 228a (2005 Lease Ex. B).

Defendants included with the Motion a December 14, 2004 email exchange finalizing the terms of the 2005 Lease agreement, wherein PAID representative Leslie Knott stated, in relevant part: "Since we have not heard anything to the contrary[,] we will assume that we will plow the police lot, but on the same basis as the remainder of the site, with no equipment dedicated to that lot."

R.R. at 236a (Motion Ex. H). On the same day, the City's attorney, Ryan Silverman, Esquire responded: "On the issue of snow removal, to my knowledge[,] **the City now plans to handle its own snow removal for the site**." R.R. at 236a (emphasis added).

In addition, Defendants' Motion relied upon Stuski's deposition testimony, wherein he stated that he has been employed with the City's Traffic Division since 1995, and has worked from the Property since the Traffic Division was relocated there. Stuski recalled that, on the day of his accident, he parked in the Parking Lot, and he slipped and fell as soon as he put his foot down to get out of his car. *See* R.R. at 101a-103a, 108a, 110a.

Stuski reported that there was a notice on the office wall specifying a number for the Traffic Division to call for snow and ice removal (Sign). *See* R.R. at 104a. The Sign to which Stuski referred instructs: "IF IT SNOWS AND THE LOTS AND WALKWAYS AT TRAFFIC HEADQUARTERS NEED TO BE PLOWED AND SALTED, CONTACT CBRE, INC. AT 215-561-8982 . . . ." R.R. at 283a; *see also* R.R. at 105a. However, the CBRE reference and the telephone number were crossed out and a new number was handwritten on the Sign. *See* R.R. at 105a, 283a. Stuski claimed that he has never made such a call because "[t]hat's up to the operations room." R.R. at 104a.

Stuski further stated that **he has only seen the Police Department's truck plow snow in the Parking Lot** so that the police cars and the employees' personal vehicles could get in and out. *See* R.R. at 104a, 106a. He added that the Police Department also plowed the Parking Lot's entrance and the walkway entrance. *See* R.R. at 106a.

Defendants' Motion is also based upon portions of the deposition testimony of Police Department Corporal Patrice Six (Corporal Six). Corporal Six has been employed by the Police Department since 1988, and has been assigned to work in the operations room at the Property since January 2005. She stated that she

has primarily done administrative work at the Property, which included reporting to CBRE the need for the Property to be plowed and salted. *See* R.R. at 241a-242a. Corporal Six described that, 99% of the time, she called the CBRE number and would have to leave a message on an answering machine. *See* R.R. at 242a. She claimed, however, that neither CBRE or anyone else ever showed up, so **the Police Department would eventually do the work**.[5] *See* R.R. at 243a-244a. She explained:

> Q. So if the [p]olice [o]fficers ultimately did the plowing, why would you call [CBRE]?
>
> A. Because that's who we need to call. I was told that's who I call, so I call. We have a snowplow truck, and we have a salt container in the back. If they don't show up, and my truck is available, I will ask them to plow and salt.

R.R. at 243a.

According to portions of Corporal Angela Mouzon-Sowers' (Corporal Mouzon-Sowers) deposition testimony attached to the Motion, she had been employed by the Police Department since 1989, and was assigned to the operations room at the Property since approximately 2010. *See* R.R. at 248a-250a. She identified that the City's employees park in lots B and C at the Property.[6] *See* R.R. at 251a, 258a. Corporal Mouzon-Sowers explained that when it snowed, the operations staff would call the number on the Sign and make a police radio call for the City's plow train. *See* R.R. at 252a-253a. Despite that she has called the CBRE number numerous times, **she has only ever witnessed police officers and/or City employees removing snow from and salting the Parking Lot (lot C)**. *See* R.R. at 253a-256a.

---

[5] The record does not support Stuski's representation that "after [Corporal Six] would . . . leave a message for [CBRE], . . . [CBRE] would eventually do the plowing," and the City equipment would only be used if CBRE did not do the work. Stuski Br. at 8; *see also* Stuski Br. at 9.

[6] Lot C is the lot in which Stuski fell. *See* R.R. at 60a n.2, 108a, 110a, 258a.

7

In response to the Motion, Stuski offered another portion of Corporal Six's deposition, wherein she confirmed that Police Department employees at the Property park primarily in lots B and C. *See* R.R. at 278a-279a (Stuski Response Ex. A). She also explained that she posted the Sign in the operations room in approximately 2012, shortly after CBRE became the Police Department's contact. *See* R.R. at 279a. Corporal Six stated that when the CBRE number changed, someone crossed out the old number and inserted the correct one. *See* R.R. at 280a, 283a.

Stuski also presented portions of City real estate operations manager Lowanda Hebert's (Hebert) deposition testimony, wherein she described that she manages the City's real estate leases, including the Property. She testified that she never saw and was not familiar with the Sign, but declared that CBRE was responsible for snow removal at the Property. *See* R.R. at 289a-291a. Hebert's knowledge came solely from her one-time July 2015 conversation with CBRE representative Judith DiBona (DiBona), who represented generally to Hebert that CBRE was responsible for snow removal at The Navy Yard. *See* R.R. at 291a-292a. **Hebert admitted that she did not narrow her inquiry to a particular date range** (*i.e.*, winter 2012-2013) **or to the Parking Lot** (*i.e.*, leased versus non-leased portions of the Property) during that discussion.[7] *See* R.R. at 292a.

Stuski relies upon *Bruder v. City of Philadelphia*, 153 A. 725 (Pa. 1931) and *Weingreen v. Gomberg*, 35 D. & C.2d 143 (1964), *aff'd per curiam*, 207 A.2d 781 (Pa. 1965), to support his conclusion that Defendants were responsible for the Parking Lot's snow and ice removal at the time of his fall, and it was "legally impermissible" for PAID and the City to negotiate otherwise. Stuski Br. at 8.

---

[7] Accordingly, there is no record support for Stuski's representation that DiBona informed Hebert that CBRE was responsible for snow and ice removal from the Parking Lot during the 2012-2013 winter. *See* Stuski Br. at 9.

In *Bruder*, the plaintiff sued the City for damages resulting from injuries he sustained when he fell on defective pavement on property owned by the landlords, portions of which were leased to various tenants. The City joined the landlords and the tenant that leased a first floor storeroom and the basement. Because the tenant did not rent the entire first floor, the trial court construed the lease provision that made the tenant responsible for the sidewalk's condition inapplicable, and concluded that the landlords were liable. The Supreme Court affirmed, stating:

> We start with the proposition that the owner in possession of an entire property is primarily responsible for a defective sidewalk in front thereof. If, however, the owner is out of possession because of a lease of the entire property, his liability ceases, and the tenant is liable for injuries occurring to a third person on the premises, because of a failure to repair sidewalks. . . . In *Brown v. Weaver*, 5 A. 32 [(Pa. 1886)], we held the owner responsible where there was injury to a pedestrian due to a defective sidewalk in front of the building which was leased to different tenants; and in *Sloan v. Hirsch*, . . . 128 A. 831 [(Pa. 1925)], we approved the rule that, where premises are let to several tenants, each occupying different portions, but all enjoying or using certain portions in common, the landlord is in control and owes to those lawfully on the premises the duty to exercise reasonable care to keep such parts in safe condition, and, for failure to do so, is liable to persons injured in consequence of his negligence. . . . While the facts are somewhat different from those in the case at bar, particularly in the respect that the owner occupied part of the building and leased the ground floor front room to the defendant, there is a thorough and illuminating discussion by Judge Linn of the general problem we are dealing with, in *City of Butler v. Western Union Telegraph Co.*, 93 Pa. Super. [] 533 [(1928)], where, in an action by the municipality to recover, from the ground floor tenant of part of the property, damages which the city had been compelled to pay to one injured by falling on an icy sidewalk in front thereof, it was held that the tenant was not liable.

*Bruder*, 153 A. at 727 (citation omitted).

9

In *Weingreen*, the tenants leased a portion of the ground floor of the landlords' property for their poultry business. The plaintiff sued the landlords and the tenants for damages arising from personal injuries sustained when he fell on snow and ice on the sidewalk outside the poultry business. The Supreme Court held that where the tenants occupied only a portion of the building and the rest was occupied by the landlords, the landlords are responsible for snow and ice removal from the sidewalks. The *Weingreen* Court, relying on *Bruder*, reasoned: "By holding the owner primarily liable in cases where a multiple tenancy exists, the law, instead of diffusing responsibility among the various tenants, has properly concentrated it in a single individual from whom an injured third party can more easily seek redress." *Weingreen*, 207 A.2d at 783.

Although, *Bruder* and *Weingreen* confirm that landlords generally retain control of common areas, they do not support Stuski's conclusion that the City could not legally assume control and responsibility for the Parking Lot. "[**L**]**iability is premised primarily on possession and control**, and not merely [on] ownership." *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. 2007) (emphasis added; quoting *Deeter v. Dull Corp., Inc.*, 617 A.2d 336, 339 (Pa. Super. 1992)).

> In Pennsylvania, it has long been established as a principle of landlord-tenant law that where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common passage-ways and aisles which are to be used by business invitees of the various tenants, **the obligation of keeping the common aisles safe** for the business invitees **is imposed upon the landlord** and not upon the tenants, **in the absence of a contrary provision in the lease or leases**[.]

*Leary v. Lawrence Sales Corp.*, 275 A.2d 32, 34 (Pa. 1971) (emphasis added). Therefore,

> '**the owner of a building who leases out different parts of the building has control over these areas not specifically**

10

**leased** and is, therefore, liable for negligence in the maintenance of the controlled areas.' *Trude v. Martin*, . . . 660 A.2d 626 ([Pa. Super.] 1995), *quoting Portee v. Kronzek*, . . . 166 A.2d 328 ([Pa. Super.] 1960).

*Schultz v. DeVaux*, 715 A.2d 479, 481 (Pa. Super. 1998) (bold and underline emphasis added). Accordingly, Defendants could control and, thus, owe a duty to Stuski only for portions of the Property PAID did not specifically lease to the City.

The law requires when deciding a summary judgment motion that "the record and any inferences therefrom must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *Laich*, 776 A.2d at 1024. Viewing the evidence in a light most favorable to Stuski, and resolving any doubts in his favor, the 2004 Lease and the 2005 Lease expressly placed the Parking Lot where Stuski fell under the City's exclusive control. The 2005 Lease and the December 2004 emails, together with testimony by Corporal Six, Corporal Mouzon-Sowers and even Stuski established that the City long ago assumed responsibility for the Parking Lot's snow and ice removal. Stuski did not proffer direct or circumstantial evidence to the contrary. Hebert's testimony did not cast doubt on that conclusion. And, although the Sign specified that CBRE should be called when snow and ice had to be removed from the Property, and the City so notified CBRE, the Parking Lot was not included in CBRE's area of responsibility at The Navy Yard in February 2013.

Based upon our review of the record, we hold that there existed no genuine issues of material fact about whether Defendants owed Stuski a duty of care. The record clearly established that the City, rather than Defendants, had control over the Parking Lot, and was responsible for maintaining it free of snow and ice at the time of Stuski's fall.[8] Because there are no material facts at issue, and Defendants are

---

[8] Absolutely no evidence contained in this record made CB Richard Ellis, Inc. liable in any capacity for Stuski's fall.

11

entitled to judgment as a matter of law, the trial court properly granted summary judgment in Defendants' favor.

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Stuski,              :
           Appellant    :
                     :
         v.           :
                     :
Philadelphia Authority for Industrial  :
Development, CBRE, Inc. and CB   :
Richard Ellis, Inc.         :
                     :
         v.           :
                     :
JPC Group, Inc. and City of    :
Philadelphia,            :   No. 1979 C.D. 2016
Department of Public Property   :

### O R D E R

AND NOW, this 25th day of May, 2017, the Philadelphia County Common Pleas Court's April 11, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge