# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,                           :
                          Appellant      :
                                         :
              v.                         :   No. 831 C.D. 2018
                                         :   Submitted: December 7, 2018
Susan Darr and Andrea Weimer             :
                                         :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


## OPINION NOT REPORTED


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                     **FILED: April 18, 2019**


Rasheed Nifas (Nifas), pro se, appeals from a Memorandum and Order of the Court of Common Pleas of Somerset County (trial court) that granted Susan Darr's (Darr) and Andrea Weimer's (Weimer) (collectively, Defendants) Motion for Summary Judgment (Motion) and dismissed Nifas' Complaint. Nifas alleged that Defendants, both employees of the Pennsylvania Department of Corrections (Department), had impermissibly opened, read, and copied mail addressed to him from courts and his attorneys in violation of his constitutional rights while he was incarcerated at the State Correctional Institution at Somerset (SCI-Somerset). Defendants have filed a Motion to Quash the appeal as untimely on the basis that it was filed more than 30 days after the Order. However, Nifas' appeal is timely, and the trial court erred in granting summary judgment; we, therefore, deny Defendants' Motion to Quash and reverse the trial court's Order.

## I. Background

In June 2014, Nifas commenced this action by filing a Complaint, captioned as an action under 42 U.S.C. § 1983,[1] in the trial court.[2] Nifas alleged the following. Nifas was incarcerated at SCI-Somerset from April 3, 2013, through March 27, 2015, during which time Defendants "constantly opened, read, and reproduced" his privileged mail. (Complaint (Compl.) ¶¶ 4, 13; Memorandum at 2.) Nifas filed and exhausted remedies on three relevant grievances: the first two relating to two parcels of mail addressed to Nifas from Attorney Cheryl Sturm (legal mail), and one relating to a letter addressed to Nifas from the Fayette County Prothonotary's Office (court mail) (collectively, privileged mail). (Compl. ¶¶ 13-15; Memorandum at 2-3.) Nifas alleged that Defendants' actions violated his rights under the First Amendment to

---

[1] This section provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Federal laws, such as 42 U.S.C. § 1983, are enforceable in state courts because "[t]he Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." *Howlett v. Rose*, 496 U.S. 356, 367 (1990). Plaintiffs bringing suit under 42 U.S.C. § 1983 in state court must show that a person, acting under the color of state law, deprived the plaintiff of a cognizable federal right. *Heinly v. Commonwealth*, 621 A.2d 1212, 1216 (Pa. Cmwlth. 1993).

[2] Upon Nifas' filing of the Complaint, the trial court dismissed the action as frivolous, based upon this Court's decision in *Brown v. Pennsylvania Department of Corrections*, 932 A.2d 316 (Pa. Cmwlth. 2007). Appellant appealed, and the Superior Court vacated the trial court's dismissal and remanded. *Nifas v. Darr* (Pa. Super., No. 1133 W.D.A. 2014, filed March 19, 2015), slip op. at 5.

the United States Constitution and sought declaratory judgment and compensatory, punitive, and nominal damages. (Compl. ¶ 18, Wherefore Clause.)

Defendants filed an Answer and New Matter, denying that Darr, a mailroom supervisor at SCI-Somerset, or Weimer, the SCI-Somerset Business Manager, had impermissibly opened, read, and copied the privileged mail. (Answer ¶¶ 5-6, 13-15.) Defendants admitted that Nifas filed three grievances and appealed the denials of those grievances. (*Id.* ¶¶ 10-12.) Defendants denied the two allegations concerning legal mail, responding that the mail in question did not contain an attorney control number, as required by Department Policy DC-ADM 803 (DC-ADM 803) and was accordingly treated as regular mail. (*Id.* ¶¶ 13-14.) Defendants also denied the allegation as to court mail addressed to Nifas, contending that they did not open, read, or reproduce that mail. (*Id.* ¶ 15.) However, if a Department employee did open the court mail, it was done by accident and the mail was neither read nor reproduced. (*Id.* ¶ 16.) Defendants asserted in New Matter that the claims are barred by reasons of sovereign immunity, and Defendants are immune because their actions were carried out in accordance with statutory or regulatory directives, and Defendants were not personally involved in the alleged actions. (*Id.* ¶¶ 33-34, 37.) Last, Defendants asserted that the claims are barred because Nifas did not exhaust administrative remedies, as required by Section 1997e(a) of the Prisoner Litigation Reform Act.[3] (*Id.* ¶ 38.)

Defendants filed a Motion for Leave to Depose Nifas, which the trial court granted. (Record (R.) Item Nos. 33, 37.) Nifas was deposed on February 25, 2016, and testified as follows. Nifas first noticed that his mail was being opened outside

---

[3] 42 U.S.C. § 1997e(a) (providing that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted").

of his presence in April 2013 and estimated that over 50 pieces of privileged mail were improperly opened outside of his presence over the time in question. (Dep. Tr. at 10-11, 14.) However, Nifas was only pursuing those instances that occurred in 2013, not 2014 or 2015. (*Id.* at 16-17.) Fellow inmates, whose names Nifas said he would later supply, witnessed that the privileged mail had been opened by the time it was delivered to Nifas. (*Id.* at 17-18.) Nifas noticed that the staples were taken out of the mail in question and the envelopes were ripped up, which is why he believed the letters had been opened, read, and copied. (*Id.* at 18-19, 33-34.) By opening, reading, and copying privileged mail outside the presence of Nifas, the Defendants would be able to learn his legal strategies in the various suits he had against Department officials and employees. (*Id.* at 21.) Nifas believed Darr was responsible for opening his legal mail because she was the mail room supervisor. (*Id.* at 25-26.) The Defendants' position that mail without an attorney control number will be treated as non-privileged mail is contrary to DC-ADM 803 and federal regulations. (*Id.* at 27.) Nifas admitted that one envelope of legal mail, which resembled the other one in question, lacked an attorney control number; however, he stated Department employees removed or blacked out the attorney control numbers from the envelopes when the letters arrived. (*Id.* at 29-31.) Nifas acknowledged that the response to his grievance regarding the court mail determined that the mail was opened as an "unintentional mistake," but disagreed with that characterization because employees in the mail room have experience with court and legal mail, particularly for Nifas. (*Id.* at 35-36.) Nifas believed Darr to be personally involved because the responses to his grievances acknowledged that the privileged mail was opened. (*Id.* at 40-41.) Further, Nifas had witnessed Darr speaking with corrections officers in the hallway before delivering the mail, although he could not

4

hear what she was saying. (*Id.*) Nifas stated that Weimer was personally involved in opening his mail because the responses to his grievances admitted that three envelopes were opened outside of his presence, although he admitted the grievance responses did not address his specific contentions that Defendants were reading and reproducing his mail. (*Id.* at 43.)

### a. Motion for Summary Judgment

Shortly after Nifas' deposition, Defendants filed their Motion. Attached to the Motion was the transcript from Nifas' deposition, as well as two sworn declarations, one by Darr and one by Amanda West (West), a former Grievance Review Officer for SCI-Somerset. West stated in her declaration that, upon review of the inmate grievance tracking system, Nifas had filed three grievances for the alleged opening and reading of his privileged mail and appealed those grievances to completion. (West Declaration ¶¶ 9-12.) In the other declaration, Darr stated that incoming legal mail without an attorney control number could be opened and inspected outside of the presence of an inmate, but the staff will not read or copy the mail unless they are permitted to under DC-ADM 803. (Darr Declaration ¶ 5.) Darr also stated that "[m]y staff and I did not copy or read the contents of the inmate's incoming legal mail. My staff made notations on the fronts of the copies of the envelopes." (*Id.* ¶ 10.) Attached to Darr's Declaration were copies of the envelopes from the Fayette County Prothonotary's Office and Attorney Sturm addressed to Nifas without an attorney control number, as well as a copy of DC-ADM 803, mail logs for Nifas, and copies of other envelopes from courts or attorneys, some of which were marked non-legal and some of which were marked privileged.

In the Motion, Defendants argued they were entitled to judgment as a matter of law because Nifas had not exhausted administrative remedies for any mail he

5

alleged was improperly opened beyond the three letters specified in his grievances; Nifas had no proof that Defendants personally opened, read, and copied his privileged mail; and Defendants were justified in opening the legal mail because it was without an attorney control number. (Motion ¶ 9.) Defendants also argued that they are immune from suit for state law claims under sovereign immunity. (Memorandum of Law in Support of the Motion at 18-19.)

Nifas opposed the Motion, arguing that there were genuine issues of material fact precluding summary judgment. Nifas contended that he had exhausted administrative remedies, as he filed grievances on three separate occasions on the basis that Defendants were consistently opening, reading, and copying his privileged mail. According to Nifas, Defendants removed or blacked out the attorney control number on the privileged mail and then opened that privileged mail outside of his presence, which violated his constitutional rights. In support, Nifas cited his deposition testimony as well as provided copies of the grievances, copies of the envelopes for the legal mail and court mail noted specifically in the grievances, and copies of other envelopes for legal mail that he alleged was opened outside of his presence.

At argument before the trial court on the Motion, Defendants argued that Nifas had no evidence that Weimer had any personal involvement in the actions alleged by Nifas, and that while Darr may have had some involvement in opening the legal mail, that opening was justified and permissible based upon DC-ADM 803. Defendants also asserted that any opening of court mail was a one time, unintentional mistake, and that there was no evidence of the mail room staff reading or copying the mail. Nifas argued that any opening of his court mail was not by mistake, as he contended this mistake had occurred over 200 times. With regard to the legal mail,

6

Nifas argued that the envelope clearly indicated it was sent from an attorney and the mail room staff had removed or scratched out a sticker from the envelope with the attorney control number. As for the issue of exhaustion of remedies, Nifas explained that if he was required to file a grievance for each letter that was impermissibly opened, he "would have thousands of documents," and further, filing a grievance for each instance would be against Department Policy DC-ADM 804 (DC-ADM 804), governing grievances. (Argument Hr'g Tr. at 13-14.)

   b. *Memorandum and Order*

Following the hearing, the trial court issued its Memorandum and Order granting Defendants' Motion. Relying upon this Court's decisions in *Jones v. Doe*, 126 A.3d 406 (Pa. Cmwlth. 2015), and *Brown v. Pennsylvania Department of Corrections*, 932 A.2d 316 (Pa. Cmwlth. 2007), the trial court set forth the standards for establishing a constitutional violation relating to an inmate's mail. While Defendants admitted to opening the legal mail, the trial court reasoned that action was justified under DC-ADM 803 because it did not have an attorney control number. The trial court determined the legal mail did not qualify as privileged mail, the court mail was unintentionally opened, and Nifas did not "put forth any evidence of [Department] employees reading or copying the contents of any of his mail," or "evidence to support the claim that there was a pattern or practice of opening [his] legal mail in violation of his First Amendment rights." (Memorandum at 8.) Although Nifas had produced evidence that his court mail was opened, the trial court found that one instance alone was insufficient to show a pattern or practice in order to establish a constitutional violation. Because Nifas had not provided evidence of

7

facts essential to his cause of action, the trial court concluded that summary judgment must be granted.[4]

The trial court's Order was exited on December 19, 2017, to Nifas and Defendants. A subsequent docket entry, and a returned envelope in the original record, show that the copy of the Order sent to Nifas was returned to the sender on January 5, 2018, as refused and unable to be forwarded. The next docket entry shows that the Order was remailed to Nifas on April 2, 2018. Nifas filed his Notice of Appeal on April 9, 2018. The trial court issued an order on June 22, 2018, directing a Rule 1925(b) Statement to be filed within 21 days, and Nifas filed his Rule 1925(b) Statement on July 5, 2018. The trial court declined to supplement its Order with a Rule 1925(a) Opinion. Defendants then filed the Motion to Quash the appeal with this Court, arguing that the Notice of Appeal, which was filed more than 30 days after the Order, was untimely, as was the 1925(b) Statement. By Orders of this Court, the parties were directed to address the question of timeliness in their briefs on the merits for disposition of the Motion to Quash along with the merits of this appeal.

## II.        Discussion

The issues before this Court are whether the appeal is timely and whether the trial court erred in granting Defendants' Motion.[5] Because it is a threshold issue, we will address the timeliness of the appeal first.

---

[4] Because the trial court found that summary judgment was proper based upon this reasoning, it determined that Defendants' alternative arguments in support of summary judgment were moot. (Memorandum at 10 n.4.)

[5] "Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion." *Stuski v. Phila. Auth. for Indus. Dev.*, 162 A.3d 1196, 1199 n.2 (Pa. Cmwlth. 2017) (citation omitted).

8

*a. Whether the appeal is timely.*

Defendants assert that because Nifas did not file his Notice of Appeal within 30 days of the date of the Order, as required by Pennsylvania Rule of Appellate Procedure 903(a), Pa.R.A.P. 903(a) (Rule 903(a)), the appeal should be quashed as untimely. Although Defendants assert in the Motion to Quash that Nifas untimely filed his 1925(b) Statement, they acknowledge in their brief that the trial court docket entries show that the 1925(b) Statement was timely filed. Nonetheless, Defendants argue in their brief that they have no record of being served with the 1925(b) Statement; thus Nifas has waived any issues on appeal.

In his Answer to the Motion to Quash, Nifas argues that the Order was first mailed to him on April 2, 2018, as reflected by the trial court docket entries. Nifas contends that he received the Order on April 4, 2018, and mailed his notice of appeal that day. Nifas argues that he timely filed the 1925(b) Statement, which is also reflected in the docket entry.

Rule 903(a) provides that a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). An order is not considered "appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999). When a notice of appeal is filed more than 30 days after the entry of the order in question, the appeal is untimely, and we are without jurisdiction to consider it. *See City of Philadelphia v. Tirrill*, 906 A.2d 663, 665-66 (Pa. Cmwlth. 2006). Rule 236(a) and (b) of the Pennsylvania Rules of Civil Procedure provides that upon entry of an order, the prothonotary "shall immediately give written notice of the entry of . . . judgment to each party's attorney of record or, if unrepresented, to each party," and note in the docket the mailing of the notice.

Pa.R.C.P. No. 236(a), (b). "The date of entry of an order" in a civil matter "shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.[C].P [No.] 236(b)." Pennsylvania Rule of Appellate Procedure 108(b), Pa.R.A.P. 108(b). Therefore, the appeal period begins to run only when "the clerk notes on the docket that notice of the entry of judgment has been sent to the prospective appellant." *Calabrese v. Zeager*, 976 A.2d 1151, 1152 (Pa. Super. 2009).[6]

Under the mailbox rule, proof that an order was properly mailed creates a rebuttable presumption that it was received. *Douglas v. Unemployment Comp. Bd. of Review*, 151 A.3d 1188, 1191 (Pa. Cmwlth. 2016); *Donegal Mut. Ins. Co. v. Ins. Dep't*, 719 A.2d 825, 827 (Pa. Cmwlth. 1998). The trial court docket shows that the Memorandum and Order was filed and mailed to Nifas on December 19, 2017. Therefore, there is a rebuttable presumption of receipt. However, the record and docket entries also show that it was returned to the sender as unable to be forwarded on January 5, 2018. The next docket entry confirms that the Order was resent on April 2, 2018. Nifas could not have received the Order until it was resent, meaning the appeal period did not begin to run until that time. *See Calabrese*, 976 A.2d at 1152. Therefore, Nifas had 30 days after the Order was sent to him on April 2, 2018, to file his notice of appeal. Nifas acted promptly upon receiving the Order, filing his notice of appeal on April 9, 2018, only 7 days after it was remailed, which is well within the 30 days required by Rule 903(a). Therefore, we will not quash Nifas' appeal as untimely.

---

[6] Although not binding on this Court, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

With regard to Defendants' contention that the 1925(b) Statement is untimely or was not properly served, we disagree. First, as Defendants now acknowledge in their brief, Nifas filed the 1925(b) Statement within 21 days from entry of the order from the trial court, which is timely. (R. Item. No. 126.) Second, to the extent Defendants argue improper service of the 1925(b) Statement, we disagree. The Certificate of Service, filed along with the 1925(b) Statement, shows that Nifas served the Statement on the trial court judge, this Court, and Defendants' counsel. Thus, it appears Defendants were properly served with notice. Therefore, the 1925(b) Statement is timely and the issues presented therein are preserved and properly before us now.

### b. *Whether the trial court properly granted summary judgment.*

On the merits of the appeal, Nifas contends that the trial court erred in granting summary judgment because Defendants had a pattern or practice of opening legal mail outside of his presence, which chills communication, confidentiality, and freedom of speech in violation of his First Amendment rights. Nifas asserts that his legal mail was properly marked, and Defendants removed the attorney control number and then impermissibly read and copied this mail. Nifas contends that his deposition testimony provides evidence that Darr and Weimer were individually involved in opening the privileged mail based upon admissions to such in the responses to his grievances. Nifas disagrees with Defendants' position that he did not exhaust administrative remedies, noting that he exhausted three grievances on the matter and further arguing that the extent of Defendants' actions in impermissibly opening and reading his privileged mail was not realized until this litigation began. In any event, Nifas contends he could not grieve every violation, as they would all be based upon the same set of facts, which is not permissible under

11

the Department's policy on grievance procedures. Last, Nifas asserts that Defendants are not immune from suit based on sovereign immunity because Nifas' cause of action arises out of federal law, 42 U.S.C. § 1983.

Defendants urge us to affirm the trial court, arguing that Nifas did not produce evidence to show a pattern or practice of his privileged mail being opened outside his presence, nor did he present evidence that Defendants read and copied that mail. Defendants argue that the three instances specifically referenced in the grievances are insufficient for Nifas to establish a pattern of impermissible conduct. Defendants also note that the Department's policy requiring an attorney control number for legal mail is constitutional; thus Defendants were justified in opening legal mail that did not comply with that requirement, as was detailed in the grievance responses. Because the Department policy is constitutional and Nifas did not prove a pattern or practice in violation of that policy nor the personal involvement of Darr and Weimer in opening the privileged mail, Defendants assert that their actions were permissible and the trial court properly granted summary judgment. Defendants do not address Nifas' arguments regarding the exhaustion of administrative remedies or sovereign immunity.

Initially, a party is entitled to summary judgment where there is no genuine issue of material fact for a necessary element of the claim, or if, after discovery, the party that will bear the burden of proof at trial has not produced evidence of facts essential to the claim. Pennsylvania Rule of Civil Procedure 1035.2, Pa.R.C.P. No. 1035.2. Therefore, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law," summary judgment may be granted. *Stuski v. Phila. Auth. for Indus. Dev.*,

162 A.3d 1196, 1199 (Pa. Cmwlth. 2017) (citation omitted). The evidence of record is reviewed in the light most favorable to the non-moving party, and "[a] genuine issue of material fact . . . exists if a reasonable jury could find in favor of the non-moving party on that issue." *Perry v. Erie Cty.*, 169 A.3d 1232, 1239 (Pa. Cmwlth. 2017). Non-moving parties may show the existence of genuine issues of material fact through their "depositions, answers to interrogatories, admissions or affidavits." *Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991). Therefore, the trial court properly granted summary judgment if no genuine issue of material fact exists as to Defendants' actions, and Defendants are entitled to judgment as a matter of law that they did not violate Nifas' constitutional rights.

When prisoners allege a constitutional challenge, courts follow a two-step analysis. The court first considers whether the policy or conduct in question infringes upon the inmate's constitutional rights. *Bussinger v. Dep't of Corr.*, 29 A.3d 79, 83 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013). If so, the court determines whether the policy is reasonable, meaning it is "reasonably related to legitimate penological interests." *Id.* (citation omitted). Prisoners have a constitutional right "not to have properly marked legal mail opened outside of their presence." *Doe*, 126 A.3d at 408. While "a single, inadvertent opening of properly marked legal mail outside an inmate's presence may not infringe a prisoner's right to free speech or his right to court access absent a showing of actual injury," repeated actions of this nature may give rise to a constitutional violation. *Id.* at 409. A pattern or practice of this nature "interferes with protected communications . . . and

13

accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).[7]

The controlling Department policy on this matter, DC-ADM 803, provides:

Incoming privileged correspondence that is hand-delivered to the Department in accordance with 37 Pa. Code § 93.2(c)(1)(i) or which is identified by a control number issued by The Office of Chief Counsel in accordance with 37 Pa. Code § 93.2(c)(1)(ii) and correspondence sent by a court will be opened and inspected for contraband in the presence of the inmate to whom it is addressed.

Section 2(B), DC-ADM 803 § 2(B). A legal mail policy, such as DC-ADM 803, that burdens First Amendment rights is not automatically unconstitutional. *Jones*, 461 F.3d at 360. If the policy is reasonably related to legitimate penological interests, it is valid. *Brown*, 932 A.2d at 319. This Court determined in *Brown* that Department policy DC-ADM 803 does not impermissibly infringe on First Amendment rights. *Id.* at 322. The petitioner in *Brown* alleged that the Department violated his constitutional rights by allowing officials to open privileged mail outside of his presence pursuant to DC-ADM 803. *Id.* at 317. Although acknowledging that inspecting outside of an inmate's presence an inmate's privileged mail without an attorney control number infringed on constitutional rights, we concluded that infringement was not impermissible, as it was reasonably related to legitimate penological interests. *Id.* at 319, 321-22 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Because the requirement of an attorney control number is rationally connected to the Department's interest in ensuring that contraband is not transmitted through purported legal mail, and the policy still provides a means for privileged

---

[7] This Court is not obligated to follow decisions of the United States Court of Appeals for the Third Circuit on issues of federal law, but nonetheless may find them persuasive. *Doe*, 126 A.3d at 409.

communications, we concluded that DC-ADM 803, as it pertained to legal mail, satisfied constitutional requirements. *Brown*, 932 A.2d at 320-21.

However, Nifas does not contend that DC-ADM 803 violates his First Amendment rights, but asserts that Defendants' repeated opening his legal mail in violation of this policy does. As noted, one single, inadvertent opening of properly marked legal mail is not sufficient to prove a deprivation; thus, if there is no evidence of repeated actions, there is no issue of material fact and summary judgment is appropriate. *See Schreane v. Holt*, 482 F. App'x. 674 (3d Cir. 2012). The plaintiff in *Schreane*, a federal prison inmate, alleged that a prison employee interfered with his access to the courts by opening his legal mail outside of his presence, in particular one letter from the United States District Court for the Middle District of Pennsylvania. *Id.* at 676. The defendants contended that the letter in question was treated as regular correspondence because it did not have the name of the sender, as required by the mail policy in the federal regulations. *Id.* at 677. The federal district court granted summary judgment to the defendants, and the United States Court of Appeals for the Third Circuit affirmed on the basis that the plaintiff had not established a pattern or practice of the defendants opening his privileged mail outside of his presence. The Third Circuit reiterated that "a single instance of opening special mail outside an inmate's presence does not rise to a constitutional deprivation." *Id.* Because the plaintiff had not provided evidence of any other instances where his legal mail was improperly opened, the Third Circuit concluded that the district court properly granted summary judgment to the defendants. *Id.*

Unlike the plaintiff in *Schreane*, and contrary to Defendants' assertion otherwise, Nifas does not allege only the three instances relating to two parcels of legal mail and one parcel of court mail. Each of the three grievances filed by Nifas,

15

which were fully appealed through the administrative process, assert a violation of his rights beyond these three instances. As Nifas contended in his grievances, his claim relates to a repeated course of conduct. Specifically, in his first grievance, Nifas asserts that "[o]n June 7, 2013, **an[d] many other occasions** . . . [Defendants] **constantly opened**" his incoming mail. (R. Item No. 102 (emphasis added).) In his second grievance, Nifas states that he received incoming legal mail on July 15, 2013, that was opened and "Defendants['] **constant violations** infringes" upon his rights. (*Id.* (emphasis added).) In his third grievance, Nifas states "On Sept[ember] 9, 2013, Defendants . . . **continued to infringe** upon [Nifas'] freedom of speech rights" and confidential communications. (*Id.* (emphasis added).) This is consistent with what he alleged in his Complaint, where he stated four separate times that Defendants "constantly" and on "numerous occasions" opened, read, and copied his privileged mail outside of his presence, (Compl. ¶¶ 1, 13, 15-16), at his deposition, and in his response to the Motion, (*see* Grievances, R. Item No. 102; Dep. Tr. at 14, 27; Nifas' Brief (Br.) at 6). Therefore, Nifas has maintained throughout that Defendants **constantly** opened, read, and copied his legal mail. Although Defendants have provided affidavits that they did not open, read, or copy privileged mail, and argue that the three specified parcels in question were opened permissibly or as an unintentional error, Nifas contends otherwise as to numerous pieces of privileged mail. Further, Defendants, as the moving party, cannot rely upon their own testimonial affidavits in support of summary judgment. *Borough of Nanty-Glo v. Am. Sur. Co. of New York*, 163 A. 523, 524 (Pa. 1932); *Sanchez-Guardiola v. City of Philadelphia*, 87 A.3d 934, 938 (Pa. Cmwlth. 2014). As a result, although Defendants have presented affidavits in support of their position that they did not open, read, or copy Nifas' privileged mail, that alone cannot eliminate an issue of

16

material fact, particularly in light of Nifas' deposition testimony to the contrary and the supporting documents he submitted to the trial court. *See Marks*, 589 A.2d at 207 (concluding that a non-moving party's deposition created a genuine issue of material fact for trial). Defendants argue, as the trial court found, that Nifas did not have any evidence that Defendants impermissibly opened privileged mail outside of his presence, but this overlooks Nifas' deposition, which creates genuine issues of material fact that preclude a determination of whether Defendants are entitled to summary judgment. Nifas testified in his deposition that there were more than simply the three pieces of legal mail and court mail noted in the grievances that were opened in violation of DC-ADM 803 and his constitutional rights. Nifas also asserts that Defendants removed the stickers on the envelopes containing the attorney control number. Further, Nifas presented to the trial court in opposition to summary judgment various legal envelopes and mail logs to support the contention that Defendants removed the attorney control number stickers from his legal mail and repeatedly opened that mail in violation of his constitutional rights. These are further issues of material fact that Defendants have not addressed and preclude summary judgment. Defendants and the trial court appear to interpret the Complaint as asserting only three incidents based upon the specific letters Nifas referenced in his grievances; however, Nifas has consistently maintained his allegations relate to a repeated course of conduct over the course of a year. Therefore, the trial court erred in granting Defendants' Motion.

Further, while Defendants argued before the trial court that Nifas has not exhausted his administrative remedies for every privileged letter other than the three specified in his Complaint, we find no support for the proposition that Nifas was required to file a **separate** grievance for **every single privileged letter** of the now

17

200 letters he contends were impermissibly opened. DC-ADM 804, the Department policy governing grievances, does not directly address this issue. However, it does state that "[a]ny grievance issue that has been or is currently being addressed will not be re-addressed in a subsequent grievance." Section 1(A)(15), DC-ADM 804 § 1(A)(15). Based upon this, Nifas contends that if he would have filed a grievance each day or for each privileged letter, it would have been "based on the same set of fact[s]," and "the Grievance Coordinator would not have addressed the issue." (Nifas' Br. at 18 (alteration in original).) We find persuasive the Third Circuit's decision in *Diaz v. Palakovich*, 448 F. App'x. 211 (3d Cir. 2011). The plaintiff in *Diaz* alleged that prison officials engaged in a pattern or practice of opening his privileged mail outside of his presence. *Id.* at 212. The plaintiff had filed eight grievances relating to the opening of his legal mail and in seven responses to those grievances, the prison employees admitted or did not contest the claims. The plaintiff only completed the full appeals process for one of those eight grievances, in which he stated that another parcel of his legal mail had been opened outside of his presence, even though he had filed several grievances about this course of conduct, which had been marked denied or resolved. *Id.* at 213. The plaintiff filed his complaint in federal court and, after discovery, the district court granted the defendants' motion for summary judgment. The district court interpreted the plaintiff's complaint as asserting only two claims, one for access to the courts and one for improper handling of legal mail. Based upon this and a review of the record, the district court determined there were only two occurrences where legal mail was opened outside of the plaintiff's presence, which did not constitute a pattern or practice. *Id.* at 214. The Third Circuit disagreed. Reasoning that the seven unappealed grievances "are contemporaneous parts of the prison record as they all

18

address the same practice of improper legal mail handling," and "[t]aken together . . . suffice to state a claim for a pattern or practice of opening legal mail outside [the plaintiff's] presence," the Third Circuit found that the plaintiff could state a claim of a pattern or practice of opening his privileged mail. *Id.* at 216. Therefore, the Third Circuit held that the district court improperly granted summary judgment. *Id.*

Much like the plaintiff in *Diaz*, Nifas filed three grievances, and the trial court and Defendants' interpretation of the grievances and complaint as limiting his claims to only three letters ignores the language of the grievances, the Complaint, and the arguments Nifas has consistently maintained. Each of the three grievances complained of Defendants' repeated conduct in impermissibly opening the legal mail outside of his presence. Further, if we were to agree with the Defendants that Nifas had to file a new grievance for every privileged letter he believed was improperly opened outside of his presence, it seems unlikely Nifas would ever sufficiently exhaust his administrative remedies to allow him to file suit.[8] In any event, we need not determine whether Nifas needed to file a grievance for every single letter, as his grievances sufficiently preserved the issue for which he filed his Complaint, as they encompass claims of repeated and ongoing violations. In all three grievances, Nifas asserts that Defendants continued to **constantly** open his privileged mail, meaning that he has exhausted his administrative remedies for the violations he alleges occurred in 2013 beyond the three specific letters referenced in each grievance. Therefore, all privileged mail sent to Nifas during that time is at issue in Nifas' Complaint and Nifas' deposition creates genuine issues of material

---

[8] A review of the mail log Nifas attached to his memorandum in opposition to the Motion shows that Nifas receives an extraordinary amount of legal mail from attorneys and state and federal courts. Over two pages of the mail log document the legal mail that Nifas received from April 2013 to December 2013. (R. Item No. 102.)

fact as to whether that privileged mail was in fact impermissibly opened, read, and copied.[9]

## III. Conclusion

Because Nifas did not receive the Memorandum and Order until April 2, 2018, Nifas' appeal is timely, and we deny Defendants' Motion to Quash. Further, because genuine issues of material fact remain as to all of the privileged mail that forms the basis for Nifas' Complaint, the trial court erred in granting summary judgment. Accordingly, we reverse and remand for further proceedings.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Covey did not participate in this matter.

---

[9] The trial court did not address the remaining arguments raised by Defendants in support of summary judgment. Nifas addresses those arguments in his appeal, although Defendants do not respond. As for the issue of whether summary judgment was proper because Nifas did not have proof establishing the individual involvement of Darr and Weimer, we note that issues of material fact remain that preclude resolution of that question at this stage. Defendants rely upon Darr's affidavit denying her individual involvement, but Nifas contests this in his deposition; thus Defendants are not entitled to judgment as a matter of law.

With regard to whether summary judgment was proper because Defendants are immune from suit for sovereign immunity, it should first be noted that Defendants did not raise this argument in the Motion nor did they assert it in the argument before the trial court, but only mentioned it briefly in the memorandum in support of summary judgment. Nonetheless, Nifas has asserted a cause of action seeking declaratory judgment and damages, and "the law is clear that sovereign immunity does not bar . . . declaratory judgment actions." _Brimmeier v. Pa. Turnpike Comm'n_, 147 A.3d 954, 961 (Pa. Cmwlth. 2016), _aff'd_, 161 A.3d 253 (Pa. 2017). To the extent that Nifas seeks other relief, the application of sovereign immunity turns on whether Darr and Weimer were acting within the course and scope of their duties during the actions in question. _See Paluch v. Pa. Dep't of Corr._, 175 A.3d 433, 438 (Pa. Cmwlth. 2017). Such a determination can only be made after the genuine issues of material fact set forth above are resolved.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,                        :
                    Appellant        :
                                     :
              v.                     :   No. 831 C.D. 2018
                                     :
Susan Darr and Andrea Weimer         :
                                     :

# **O R D E R**

NOW, April 18, 2019, Susan Darr's and Andrea Weimer's Motion to Quash is **DENIED**, and the Order of the Court of Common Pleas of Somerset County is **REVERSED** and this matter is **REMANDED**.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge